NOVELTIES DISTRIBUTION CORPORATION and New Jersey Manufacturers Insurance Company, Petitioners,

v.

Anthony MOLEE and Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 82–3376.

United States Court of Appeals,
Third Circuit.

Argued March 16, 1983.

Held C.A.V. Until April 11, 1983.

Decided June 29, 1983.

Leonard J. Linden (argued), Linden & Gallagher, New York City, for petitioners.

George J. Duffy (argued), Baker, Garber, Duffy & Baker, Hoboken, N.J., for respondent Anthony Molee.

T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Mark C. Walters, Atty. (argued), U.S. Dept. of Labor, Washington, D.C., for respondent U.S. Dept. of Labor.

Before ADAMS and GARTH, Circuit Judges, and ACKERMAN, District Judge.*

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Novelties Distribution Corporation (Novelties) and its insurance carrier, New Jersey Manufacturers Insurance Company, petition for review of an order of the Benefits Review Board (Board), affirming a decision of an Administrative Law Judge (ALJ). The ALJ and the Board granted benefits to Anthony Molee, a Novelties employee, pursuant to the Longshoremens' and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901–50. Petitioners argue that Molee's claim was not covered by the Act because Molee was not engaged in "maritime employment" within the meaning of 33 U.S.C. § 902(3) and Novelties was not an employer under 33 U.S.C. § 902(4). For the reasons set forth below, we will affirm.

### I

Novelties is in the business of receiving, warehousing, and distributing lumber. It is a wholly owned subsidiary of Maher Terminals, Inc. (Maher), a stevedoring company. Novelties' lumber operation occupies two areas: Berth 78, a ten acre area directly adjacent to the water, and a sixteen acre "Bay Avenue Area," 2500 feet inland. Molee spent virtually all his working time on Berth 78 and at most one day a year at the larger area, taking inventory.

When ships anchored at Berth 78, Maher's employees would unload lumber from the vessel to the "stringpiece," the edge of the dock closest to the ship. Novelties' employees would then move the lumber from the stringpiece to the storage area. Molee testified that, although he had no official job title, he was a "checker" or "location man." App. 30–31; 34–35. He explained that his "work was always checking, checking trucks, checking the lumber off the ship...." App. 49, 60, 30–31, 34–35. Molee would normally be stationed somewhere in the middle of Berth 78. Although he would sometimes work alongside the stringpiece, "any movement he may have made would end at the water's edge." App. 28.

* Honorable Harold A. Ackerman, United States District Court for the District of New Jersey, sitting by designation.

On August 11, 1977, Molee was performing his usual job of directing and organizing the placement in Berth 78 of lumber that was being removed from a ship, when he was struck and run over by a lift truck bringing lumber from the stringpiece. It is stipulated that Molee was totally disabled by the accident.

Because the parties were unable to agree that Molee was covered under the LHWCA, the matter was referred to an ALJ for hearing and decision. *See* 33 U.S.C. § 919. The ALJ found in favor of Molee and ordered that payments be made under the Act. Molee, the ALJ explained, "played an integral and essential role in the longshore process" and, therefore, was an employee covered by the Act. App. 102. The Board affirmed this decision. 15 Ben.Rev.Bd.Serv. 1 (1982). The employer and its insurance carrier petitioned for review under 33 U.S.C. § 921(c) on the grounds that neither Molee nor Novelties is covered by the LHWCA.

## II

Petitioners assert that Molee functioned as an agent of land-based consignees, that he did not engage in maritime employment, and, consequently, that he was not covered by the Act.[1] Their argument is based principally on the fact that Novelties, because of its separate corporate identity from Maher, is an agent of the consignees and not of the stevedoring company. Molee urges that the nature of his work brings him under the Act, regardless of how Novelties, Maher, and the consignees choose to structure their legal relationships.

When Novelties' employees take possession of cargo, the cargo has in effect, according to petitioners, already been delivered to the consignees. The trucks that take the lumber from the stringpiece for storage in Berth 78 are, again according to petitioners, the first step in the land-based transportation of the cargo. Novelties stresses that it does not deliver cargo stored in Berth 78 to the consignees. Rather Novelties insists that the stored cargo has already been delivered to the consignees as soon as Novelties takes possession, and that, when Novelties releases it for further transshipment, it gives the cargo to the customers of the consignees. By divorcing itself from Maher, Novelties has, in its view, transformed its employees, including Molee, from longshoremen into completely land-based lumberyard workers.[2] This argument reintroduces the type of checkered, arbitrary coverage that Congress labored to eliminate in amending the Act in 1972 and runs counter to the liberal spirit in which "coverage" is to be construed.

In 1972 Congress addressed "the continuing anomaly that the schedule of benefits to be applied in any case depended on whether the injury occurred on the land or water side of the gangplank."[3] *Sea-Land Service, Inc. v. Director, Office of*

---

1. Section 903(a), entitled "Coverage," reads in pertinent part:

   Compensation shall be payable under this Act in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employee in loading, unloading, repairing, or building a vessel).

   Section 902(3) provides:

   The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

2. The record on the question of agency is undeveloped, and the ALJ made no findings on this issue. The Board conclusorily stated that Novelties "acts as the agent of the consignee." App. 91. Because we hold that Molee's claim falls within the Act, even if he is an agent of the consignees, we will express no view on the agency issue or on the stage at which the consignees obtain possession.

3. The historical background of the 1972 Amendments has been recited many times, and little detail need be presented here. *See Director, Office of Workers' Compensation Programs v. Perini North River Associates,* —— U.S. ——, 103 S.Ct. 634, 641–651, 74 L.Ed.2d 465 (1983); *Sun Ship, Inc. v. Pennsylvania,* 447 U.S. 715, 717–26, 100 S.Ct. 2432, 2434–39, 65 L.Ed.2d 458 (1980).

*Workers' Compensation Programs (Johns),* 540 F.2d 629, 633 (3d Cir.1976); *P.C. Pfeiffer Co. v. Ford,* 444 U.S. 69, 72–73, 100 S.Ct. 328, 331–332, 62 L.Ed.2d 225 (1979). In place of a 'situs' test of eligibility for compensation, Congress substituted a two-part test "looking both to the 'situs' of the injury and the 'status' of the injured." *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 264–65, 97 S.Ct. 2348, 2357, 53 L.Ed.2d 320 (1977).

Petitioners contend that Molee fails the "status" test imposed by the 1972 Amendments. Cases decided under the "status" test make it apparent, however, that Molee was engaged in "maritime employment" within the meaning of the amended section 902(3), regardless of whether he was an agent of the consignee. In construing the coverage of section 902(3), it must be recognized that

> [t]he language of the 1972 Amendments is broad and suggests that we should take an expansive view of the extended coverage. Indeed, such a construction is appropriate for this remedial legislation. The Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results.' *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953).

*Caputo,* 432 U.S. at 268, 97 S.Ct. at 2359.

*Caputo* and *Ford,* the two Supreme Court decisions dealing with the landward reach of the 1972 Amendments, decisively reject the "point of rest" theory that maritime employment includes "only the portion of the unloading process that takes place before the stevedoring gang places cargo onto the dock." *Ford,* 444 U.S. at 75, 100 S.Ct. at 333; *Caputo,* 432 U.S. at 274–79, 97 S.Ct. at 2362–65. Under the point-of-rest doctrine, Molee would not be a covered employ-ee, for his work commenced only after the cargo had reached a "point of rest" on the stringpiece. The ALJ and the Board held that Molee was involved in the overall unloading of ships, indeed that Molee, in the ALJ's words, "played an integral and essential role in the longshore process," App. 102, and that only a reliance on the discredited point-of-rest doctrine could yield a contrary result. Petitioners insist that their position does not depend on the point-of-rest thesis. In their view, the Supreme Court in rejecting "point of rest" never intended to extend "maritime employment" to encompass workers who are agents of land-based consignees, even when those workers take cargo on the seaward edge of the dock and store it in an area adjacent to the water. Whether or not the Supreme Court's rejection of the point-of-rest idea is itself dispositive, the reasoning of *Caputo* and, to an even greater extent, *Ford* make clear that Molee is an employee covered by the statute because he is "engaged in longshoring operations." *See Perini, supra* note 3, —— U.S. at ——, 103 S.Ct. at 648 n. 27.

Both claimants in *Caputo* were held to be statutory employees. Carmelo Blundo was, like Molee, a checker, "responsible for checking and recording cargo as it was loaded onto or unloaded from vessels, barges, or containers." 432 U.S. at 252–53, 97 S.Ct. at 2351–52 (footnote omitted). The Supreme Court determined that Blundo's task was "an integral part of the unloading process." Ralph Caputo, a member of a longshore crew, had been assigned at various times to a number of operations, but Congress' intent to eliminate "shifting and fortuitous" coverage dictated that he be considered an employee under the Act. *Id.* at 274, 97 S.Ct. at 2362. Relying on a "typical example" of the coverage explained in the legislative history,[4] the Court

---

4. According to the legislative history:

The intent of the Committee is to permit a uniform compensation system to apply to employees who would otherwise be covered by this Act for part of their activity. To take a typical example, cargo, whether in break bulk or containerized form, is typically unloaded from the ship and immediately transported to a storage or holding area on the pier, wharf, or terminal adjoining navigable waters. The employees who perform this work would be covered under the bill for injuries sustained by them over the navigable waters or on the adjoining land area.... [E]mployees whose responsibility is only to pick up stored cargo for further trans-shipment would not be covered, nor would purely clerical employees whose jobs do not require them to participate in the loading or unloading of cargo. However, checkers, for example, who are directly involved in the loading

found a congressional "intent to cover those workers involved in the essential elements of unloading a vessel. . . ." 432 U.S. at 267, 97 S.Ct. at 2358.

*Ford* interpreted *Caputo* expansively. The claimants in *Ford* did not perform any work over navigable waters; yet the Court held that they were engaged in maritime employment for "[t]he term 'maritime employment' refers to the nature of a worker's activities." 444 U.S. at 78, 100 S.Ct. at 335. Congress, the Court explained, had "anticipated that some persons who work only on land would receive benefits under the 1972 Act":

> the usual longshoring crew includes some men whose duties may be carried out solely on the land. A typical loading gang consists of persons who move cargo from a warehouse to the side of a ship, frontmen who attach the load to the ship's gear for lifting aboard the vessel, and a hold gang which stores cargo inside the ship. Although the workers who carry the cargo to shipside and the frontmen who attach the cargo to the lifting devices need not board a ship to carry out their duties, they are incontestably longshoremen directly engaged in the loading process.

*Id.* at 80–81, 100 S.Ct. at 336 (footnote omitted).[5] In a similar vein, the Court stated that "[p]ersons moving cargo directly from ship to land transportation are engaged in maritime employment. . . . A worker responsible for some portion of that activity is as much an integral part of the process of loading or unloading a ship as a person who participates in the entire process." *Id.* at 82–83, 100 S.Ct. at 337.

Petitioners argue that in *Ford* no issue was raised as to whether the workers were the agents of the consignees. Petitioners could prevail on this point only if the nature of a harbor worker's activities varies depending on the agency relation between his

employer, the employer of the workers who actually perform tasks over the water, and the consignees of the cargo.

It is true that the agency issue was not explicitly raised in *Ford,* but the Court made it unmistakably clear that the test of coverage is to be simple and uniform and not manipulable at the employer's whim. *Id.* at 83–84, 100 S.Ct. at 337–338. *Ford* implies that a test of coverage is unacceptable if it frustrates the congressional goals of simplicity and uniformity by making pivotal considerations like an employer's legal relations, rather than the actual nature of the tasks performed. If "the scope of maritime employment [does not] depend upon the vagaries of union jurisdiction," *id.* at 82, 100 S.Ct. at 337, it should be equally independent of changeable corporate structures, even if, as petitioners maintain, the separation between the work of Novelties' employees and those of Maher reflects a traditional division of labor in the handling of lumber. *See* Petitioners' Br. 29–30.

Decisions of the Third Circuit do not point to a different result. In *Johns,* we remanded for a determination of whether the claimant was engaged in maritime employment when working as a shuttle driver. *Johns* adopted a "functional" test: "The key is the functional relationship of the employee's activity to maritime transportation, as distinguished from such land-based activities as trucking, railroading or warehousing." 540 F.2d at 638. Under the *Johns'* analysis, federal coverage extends to employees in Molee's situation, who help deliver cargo from the seaward side of the dock to an adjacent storage area from which customers may pick up cargo. *Johns'* "functional" approach demonstrates that such coverage is independent of whether the employee is technically the agent of the consignee. The employee's activity, rather than his legal relationship to the consignee,

---

or unloading functions are covered by the new amendment.

S.Rep. No. 92–1125, 92nd Cong., 2d Sess. 13 (1972); H.Rep. No. 92–1441, 92nd Cong., 2d Sess. 11, *reprinted in* U.S.Code Cong. & Ad. News 4698, 4708. Note the express statement that "checkers" are covered. Molee's uncon-

troverted testimony was that he was a "checker."

**5.** *Cf. Pittston Stevedoring Corp. v. Dellaventura,* 544 F.2d 35, 53 (2d Cir.1976), *aff'd sub nom. Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 97 S.Ct. 2348, 53 L.Ed.2d 320 (1977).

is the critical factor in determining the point at which cargo is ready to be picked up by "the next mode of transportation":

> The line which Congress intended to draw was between maritime commerce and land commerce, and the coverage of the federal law starts at the point where the cargo passes to or from an employer engaged in the former to an employer engaged in the latter. That the one employer may be engaged in both types of commerce is irrelevant. The line should still be drawn where cargo is delivered to a segregated place for delivery to the next mode of transportation.

*Id.* at 639.

Petitioners rely heavily on the first sentence of this passage, arguing that federal coverage ended when the cargo passed from Maher, an employer concededly engaged in maritime commerce, to Novelties, an employer allegedly engaged solely in land-based activities. This reading of *Johns* cannot withstand scrutiny. The language on which the petitioners base so much of their argument does not purport to define, or even to suggest, when an employer is engaged in land, as opposed to maritime commerce. It simply leaves open the question whether Novelties is an employer engaged in maritime commerce. It is more in keeping with the overall functional approach of *Johns* to say that Novelties is engaged in maritime commerce because it operates as an integral unit with Maher than it is to say that Novelties is engaged solely in land-based activity because it maintains a separate corporate identity from Maher and is an agent of the consignees.[6] Furthermore, the second sentence of the quoted passage clearly implies that, in ascertaining when cargo passes from a maritime employer to one engaged in land commerce, the corporate identity of the employer has no significance. In any event, Molee's close nexus to

maritime activity strongly supports a holding that he passes the *Johns* test.[7]

### III

Petitioners argue that Molee is not covered by the LHWCA because Novelties is not an employer under the Act. Prior to the 1972 Amendments, "employer" was defined somewhat narrowly: "The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock)." 33 U.S.C. § 902(4). The crucial expression, "navigable waters," did not encompass land areas. Under that version of the Act, petitioners might well have a sound argument for the position that Novelties is not an "employer." The 1972 amendments, however, greatly expanded the definition of "employer":

> The term "employer" means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).

33 U.S.C. § 902(4).

Although Congress clearly meant to widen the reach of the term "employer," the legislative history suggests that there was no intention of extending coverage under the Act to individuals who are not employed by a person who is an employer, *i.e.,* a person at least some of whose employees are engaged in whole or in part in some form of maritime employment. Thus, an individual employed by a person none of whose employees work, in whole

---

6. Whether Novelties is an "employer" under the Act is discussed at greater length in Part III of this opinion.

7. Subsequent decisions of this Court reinforce our conclusion that Molee is an employee under the *Johns* standard. In *Dravo Corp. v. Maxin,* 545 F.2d 374, 380 (3d Cir.1976), we held that a claimant involved in a preliminary stage

of boatbuilding was a shipbuilder and hence a covered employee. The reality of the employee's work, rather than the labels imposed by the employer, was determinative. *See also Dravo Corp. v. Banks,* 567 F.2d 593, 595–96 (3d Cir.1977); *Maher Terminals v. Farrell,* 548 F.2d 476, 478 (3d Cir.1977); *Sea-Land Service, Inc. v. Director, Office of Workers' Compensation Programs,* 552 F.2d 985, 995 (3d Cir.1977).

or in part, on the navigable waters, is not covered even if injured on a pier adjoining navigable waters.

S.Rep. No. 92–1125, 92d Cong., 2d Sess. 13 (1972); H.Rep. No. 92–1441, 92d Cong., 2d Sess. 11, *reprinted in* 1972 U.S.Code Cong. & Ad.News 4698, 4708.

The Supreme Court in *Perini*, —— U.S. at ——, 103 S.Ct. at 646 n. 24, after quoting this portion of the legislative history, noted

> ... an apparent inconsistency between the actual wording of section 2(4) and the expression in the legislative history. Section 2(4) defines an "employer" to be the employer of any employee engaged in maritime employment on the "navigable waters" as defined by the 1972 Amendments to include the expanded landward situs. The legislative history, however, appears to contemplate that a statutory employer must have at least one employee working over the actual navigable waters before any employee injured on the new land situs can be covered.

The Supreme Court did not in any way endorse the view seemingly taken by the legislative history. Indeed, it would be extraordinary for a court to adopt a position which the legislative history merely appears to contemplate, rather than follow the statute's actual words. *See Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Oregon,* 366 U.S. 643, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961).

■ Although the legislative history is ambiguous, it can be properly read to categorize an entity such as Novelties as an "employer." [8] The language of the statute is unproblematic and plainly dictates that Novelties be considered an "employer."

---

8.  According to the Senate Report:

> Section 2(b) amends section 2(4) of the Act to define an "employer" ... as anyone whose employees are employed in *maritime employment on the navigable waters* of the United States, *and* to *define navigable waters as including any adjoining pier, wharf, dry dock, terminal....*

S.Rep. No. 92–1125, 92d Cong., 2d Sess. 17 (1972) (emphasis added).
The House version similarly explains:

## IV

The order of the Benefits Review Board will be affirmed. Pursuant to 33 U.S.C. § 928, Molee's counsel has requested $2,739.25 in attorney's fees in the event that Molee's claim is successful. The petitioners have not opposed this request, and it will be granted.

Subsection (b) amends the definition of the term "employer" contained in section 2(4) of the Act. Under the amendment ..., the term "employer" means an employer upon the navigable waters and on any dry dock, as under present law, *and is extended to include an employer of such employees in such employment on any adjoining pier, wharf, terminal, ....*
H.R.Rep. No. 92–1441, 92d Cong., 2d Sess. 14 (1972), *reprinted in* U.S.Code Cong. & Admin. News 1972, p. 4711 (emphasis added).