Samuel H. CURTIS, Petitioner,

v.

SCHLUMBERGER OFFSHORE SERVICE, INC., Travelers Insurance Company,

and

Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.

No. 87–3683.

United States Court of Appeals, Third Circuit.

Argued April 12, 1988.

Decided June 14, 1988.

Jordan N. Pedersen (argued), George J. Duffy, Baker, Garber, Duffy & Pedersen, Hoboken, N.J., for petitioner.

Martin Bergman (argued), Foley, Smit, O'Boyle and Weisman, New York City, for respondents Schlumberger Offshore Service, Inc., and Travelers Ins. Co.

Joshua T. Gillelan II (argued), George R. Salem, Donald S. Shire, J. Michael O'Neill, U.S. Dept. of Labor, Washington, D.C., for Director, Office of Workers' Compensation Programs.

Before HUTCHINSON, SCIRICA and GARTH, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

This petition for review involves a claim for workers' compensation for personal injury pursuant to the Outer Continental Shelf Lands Act, Pub.L. No. 83-212, 67 Stat. 462 (1953) (current version at 43 U.S. C.A. §§ 1331-1356 (West 1986 & Supp. 1988)) (OCSLA).[1] The injury occurred in connection with outer continental shelf drilling operations but "off" the shelf itself. An Administrative Law Judge (ALJ) found that petitioner's injury was covered under the OCSLA, which incorporates the workers' compensation remedies of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (West 1986) (LHWCA), for certain employees of persons engaged in drilling operations above the outer continental shelf. On appeal, the Benefits Review Board (the Board) reversed, holding that the injury occurred outside the intended scope of the OCSLA. We have jurisdiction to review the final decision of the Board pursuant to 33 U.S.C.A. § 921(c). Because we find that the OCSLA encompasses petitioner's claim, we will reverse and remand to the Board.

Petitioner Samuel H. Curtis worked as a well-logging operator[2] for Schlumberger Offshore Service, Inc. (Schlumberger). In April of 1978 Curtis was working off the coast of New Jersey on the *New Era,* a semi-submersible drill rig owned by Conoco Oil Company and operated by the Diamond M Company. On April 20, 1978, Curtis returned to his employer's headquarters in Rhode Island after a week on the *New Era.* Upon arriving, he was immediately ordered back to the *New Era.* During the early morning hours of April 21, Curtis drove to Atlantic City to meet the helicopter which was to fly him to the *New Era.* While on the New Jersey Garden State Parkway, the company car was struck head-on by another vehicle. Curtis suffered severe injuries and his passenger was killed.

Curtis filed a claim for permanent partial disability compensation with the Office of Workers' Compensation Programs on June 21, 1978. Travelers Insurance Company (Travelers) voluntarily paid Curtis benefits for temporary total disability, at first under the LHWCA and after August, 1978 at reduced rates under New Jersey workers' compensation law. When Curtis returned to work on October 1, 1979 as a gun shop helper for Schlumberger, a position paying considerably less per year than that of well-logging operator, Travelers disputed Curtis's claim for permanent partial disability benefits.

At the formal hearing before the ALJ in October of 1981, Schlumberger and Travelers disputed both OCSLA coverage and the extent of Curtis's permanent disability. They argued that the statute only covered accidents occurring on an artificial island or fixed platform over the continental shelf, not this New Jersey motor vehicle collision. They also argued that the *New Era* rig was not a fixed platform and therefore was not within the scope of the OCS-LA. They instead contended that Curtis was a "crew member" and his injuries were more properly covered by the Jones Act than by New Jersey workers' compensation law.

The ALJ found that the claim was covered by the OCSLA and awarded plaintiff

---

**1.** This case involves the OCSLA prior to its amendment in 1978. The 1978 amendment was largely technical. *See infra* note 7.

**2.** A well-logging operator gathers test data at offshore oil and gas wells and uses it to evaluate drilling sites.

relief for permanent disability under § 8 of the LHWCA, 33 U.S.C.A. § 908.[3] *Curtis v. Schlumberger Offshore Services, Inc.,* No. 81–LHCA–1259 (Aug. 8, 1983). The Board reversed. *Curtis v. Schlumberger Offshore Services, Inc.,* BRB No. 83–2113 (Aug. 26, 1987) (per curiam). It stated that the accident in New Jersey was "well outside the geographic boundaries of the Outer Continental Shelf" and therefore fell outside the intended scope of the OCSLA. *Curtis,* BRB No. 83–2113, slip op. at 3. Although Curtis was within the scope of his employment at the time he was injured, he was not "subject to the unique working conditions and hazards associated with the exploration and development of the Shelf." *Id.* Therefore, the Board concluded that his injuries were not covered. The Board specifically found it unnecessary to address whether the OCSLA only covers accidents on fixed platforms and whether the ALJ properly computed Curtis's loss of earning capacity. *Id.* at 3 n. 2.

On review,[4] we must decide whether Curtis's injury falls within the scope of 43 U.S.C.A. § 1333(b).[5] Our review is limited to a determination of whether the Board acted in conformance with applicable law and within its proper scope of review. *Oravitz v. Director, Office of Workers'*

---

**3.** 43 U.S.C.A. § 1333(b) applies the provisions of the LHWCA to injuries which are included within the coverage of the OCSLA.

**4.** In the absence of any opposition we granted the Director of the Office of Workers' Compensation Programs' (Director's) "motion to amend and reform the caption." In that motion he relied on 33 U.S.C.A. § 921(c) and Federal Rule of Appellate Procedure 15(a). His brief was styled a "brief in support of petitioner." In fact, he supported petitioner only on the issue of liability, opposing him on damages.

At oral argument the Director responded to a question from the panel by asserting there was no doubt as to his "standing." If by that response he asserts standing, not merely as an agency responding to an attack on its ruling pursuant to Rule 15(a), but as a party who is "aggrieved" within the meaning of 33 U.S.C.A. § 921(c) by a decision of the Benefits Review Board, we do not find the issue as clear and free from doubt as he asserted. In *Krolick Contracting Corp. v. Benefits Review Board,* 558 F.2d 685 (3d Cir.1977), we held the Director of the Office of Workers' Compensation Programs to be the proper respondent in the appeal of a black lung benefits decision under the Coal Mine Health and Safety Act, 30 U.S.C. § 801 *et seq.* In discussing the LHWCA (the Coal Mine Health and Safety Act section 932(a) refers compensation matters to the LHWCA provisions), Judge, now Chief Judge, Gibbons found that Congress may have omitted any reference in the LHWCA to a particular agency respondent because of Fed.R. App.P. 15(a), which requires an agency be named as respondent in agency review proceedings. Judge Gibbons found that the Director had standing, since the government in black lung cases may have secondary liability. The court declined to decide this issue for other benefit statutes incorporating the LHWCA. In *Director, Office of Workers' Compensation Programs v. O'Keefe,* 545 F.2d 337 (3d Cir.1976) we assumed the Director's power to petition for review of a Benefits Review Board decision in a LHWCA claim but rejected his argument that he

was entitled to "great deference" in interpreting the Act as the responsible administrator.

Other courts of appeals have said the Director has standing pursuant to Fed.R.App.P. 15(a) and 33 U.S.C.A. § 921(c). *See Goldsmith v. Director, Office of Workers' Compensation Programs,* 838 F.2d 1079, 1080 (9th Cir.1988) (Director should be named as respondent in all § 921(c) actions); *Director, Office of Workers' Compensation Programs v. Cargill, Inc.,* 718 F.2d 886, 888–89 (9th Cir.1983) (Director has standing to petition for review of Board decision adversely affecting fund under § 921(c)); *Thornton v. Brown & Root, Inc.,* 707 F.2d 149, 154 (5th Cir.1983) (Director is proper party respondent under Fed.R. App.P. 15(a)); *Shahady v. Atlas Tile & Marble Co.,* 673 F.2d 479, 485 (D.C.Cir.1982) (Director is proper party respondent under § 921(c) but not Rule 15(a)). *Shahady* seems sound on policy because the Director's supervisory and enforcement interest should be sufficient to entitle him to participate as a party; his responsibility to oversee the development of a consistent body of law in this area should not depend upon the vagaries of the parties' private, albeit adversary, interests. We do not have the benefit of full briefing on this issue. Fortunately, we need not decide it because all the issues on the merits are presented to us by the employer and employee, who are unquestionably aggrieved parties. Thus, our decision in this case does not depend upon resolution of the Director's status.

**5.** Schlumberger and the Director also argue that we should review the ALJ's determination of Curtis's loss of earning capacity. The Director and Curtis are at odds on this issue, as Curtis supports the ALJ's determination. Because the Board specifically declined to address diminished wage earning capacity, we will remand to the Board for consideration of this issue. *See Bernardo v. Director, Office of Workers' Compensation Programs,* 790 F.2d 351, 353–54 (3d Cir. 1986); *Base Billeting Fund, Laughlin Air Force Base v. Hernandez,* 588 F.2d 173, 176–77 (5th Cir.1979) (per curiam).

*Compensation Programs*, 843 F.2d 738, 739 (3d Cir.1988); *Janusziewicz v. Sun Shipbuilding & Dry Dock Co.*, 677 F.2d 286, 290 (3d Cir.1982). We owe no deference to the Board's interpretation of the OCSLA; however, we will respect that interpretation if it is reasonable. *See Potomac Electric Power Co. v. Director, Office of Workers' Compensation Programs*, 449 U.S. 268, 278 n. 18, 101 S.Ct. 509, 514–15 n. 18, 66 L.Ed.2d 446 (1980) (Board's interpretation of LHWCA entitled to no special deference since it does not "administer" that statute); *Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 812 F.2d 518, 521 (9th Cir.1987).

In maritime jurisprudence, courts have spent decades trying to discern what kind of employee is covered by what statute for which injuries occurring in which locations. This case is apparently one of first impression and allows us to carry on that tradition. Accordingly, we will proceed to determine whether Congress intended that the OCSLA cover off-rig injuries. In so doing, we first look to the plain language of the statute. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986); *Department of the Navy, Military Sealift Command v. FLRA*, 836 F.2d 1409, 1416 (3d Cir.1988).

Congress enacted the OCSLA in 1953 to establish federal control and jurisdiction over the outer continental shelf and its apparently vast mineral resources, including oil and natural gas. The Secretary of the Interior was given the power to issue regulations to foster competition for federal leases of mining rights. 43 U.S.C.A. § 1334(a). Section 1332 established federal control over the subsoil and seabed lying more than three miles seaward of a state's shores and up to the outer limits of the shelf.[6] 43 U.S.C.A. §§ 1332, 1312. In § 1333, entitled "Laws and regulations governing lands," Congress provided in subsection (c) that the LHWCA was to apply "[w]ith respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section." 43 U.S.C. § 1333(c) (1958 version).[7] Subsection (b) provided that district courts would have jurisdiction over:

cases and controversies arising out of or in connection with any operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing or transporting by pipeline the natural 'resources, or involving rights to the natural resources of the subsoil and seabed of the outer Continental Shelf.

43 U.S.C. § 1333(b) (1958 version).

The Board's holding that Curtis's accident, although occurring within the scope of his employment, was "well outside the geographic boundaries of the Outer Continental Shelf" and therefore outside the intended scope of the OCSLA, is not supported by the language of the statute which refers to "any injury occurring as the result of operations described in subsection (b)." 43 U.S.C.A. § 1333(c) (1958 version). The Board sought to support its holding by reasoning that Curtis "was not at the time of the accident subject to the unique working conditions and hazards associated with the exploration and develop-

**6.** It did not, however, give the United States ownership over things lying *on* the seabed, such as the *Titanic* or a Spanish galleon.

**7.** In the 1958 version section 1333(c) provided:
(c) With respect to disability or death of an employee resulting from any injury occurring as the result of operations described in subsection (b) of this section, compensation shall be payable under the provisions of the Longshoremen's and Harbor Workers' Compensation Act under this section—
(1) the term "employee" does not include a master or member of a crew of any vessel, or an officer or employee of the United States or any agency thereof or any State or foreign government, or of any political sub-division thereof;
(2) the term "employer" means an employer any of whose employees are employed in such operations; and
(3) the term "United States" when used in a geographical sense includes the outer Continental Shelf and artificial islands and fixed structures thereon.
The OCSLA was amended effective September 18, 1978, after plaintiff's accident. The 1978 amendment was essentially technical, combining § 1333(c) within (b). *See* H.R.Conf.Rep. No. 1474, 95th Cong., 2d Sess. 80–81, *reprinted in* 1978 U.S.Code Cong. & Admin.News 1674, 1679–80 (hereinafter House Conference Report).

ment of the Shelf." *Curtis*, BRB No. 83–2113, slip op. at 3. However, subsections (b) and (c) of § 1333 did not place any nexus, situs or geographic restrictions on claims for injuries in connection with outer continental shelf operations. Indeed, former subsection (b), incorporated into former subsection (c) by reference, also provides jurisdiction over matters "arising out of or in connection with" any operations conducted on the outer Continental Shelf. Since the 1978 amendment combining (b) and (c) was not meant to change the meaning of the law, the language quoted speaks against the Board's position. The only possible statutory basis for the Board's position is § 1333(a)(1), which reads:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands and fixed structures which may be erected thereon for the purpose of exploring for, developing, removing, and transporting resources therefrom, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State. . . .

43 U.S.C. § 1333(a)(1) (1958 version).[8] This subsection makes no reference to injuries and, as we read it, is a provision intended for the separate purpose of asserting federal jurisdiction over the seabed underlying the outer continental shelf. The only criterion subsections (b) and (c) impose for securing LHWCA benefits is for injured employees to be involved in "any operations conducted on the outer Continental Shelf for the purpose of exploring for, [and] developing . . . the natural resources . . . of the outer Continental Shelf." 43 U.S.C.A. § 1333(b), (c). There also was no limitation in § 1333(b) to "artificial islands and fixed structures" like the one in § 1333(a)(1). In-

deed, the Fifth Circuit applied this reading of the OCSLA in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337 (5th Cir. 1982) (LHWCA is exclusive remedy against helicopter pilot's employer for pilot's death while transporting workers to offshore rig located on outer continental shelf).

A review of the legislative history of the OCSLA does not prove helpful. Regarding the 1978 amendment combining subsections (b) and (c), the House Conference Report comments that this merger:

> was therefore necessary to more specifically describe the applicability of the Longshoremen's Act to OSC [sic] activities. This amendment involves no change in existing law. It was not the intent . . . to alter in any way the existing coverage of the Longshoremen's Act, nor of other remedies . . . for injury or death.

House Conference Report at 81; 1978 U.S. Code Cong. & Admin.News at 1680. In 1978 Congress may have been aware of law in the Fifth Circuit applying LHWCA compensation provisions, pursuant to OCSLA, to injuries related to outer continental shelf operations, as opposed to injuries occurring on the shelf itself.

This interpretation had been developing in the Fifth Circuit prior to the 1978 amendment. In *Nations v. Morris*, 483 F.2d 577 (5th Cir.), *cert. denied*, 414 U.S. 1071, 94 S.Ct. 584, 38 L.Ed.2d 477 (1973) the court held that an injured drilling rig employee could not sue a fellow employee under Louisiana state law because the LHWCA is the exclusive remedy for injured employees covered by the OCSLA. The court explained:

> OCSLA, in its incorporation of [the LHWCA], did not speak in terms of injuries occurring *on* such platforms so as to distinguish them from those *off* the plat-

---

8. Section 1333(a)(1) was amended in 1978 to read:

> The Constitution and laws and civil and political jurisdiction of the United States are hereby extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the

> purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such resources, to the same extent as if the Outer Continental Shelf were an area of exclusive Federal jurisdiction located with a State. . . .

43 U.S.C.A. § 1333(a)(1)(West 1986).

forms. The incorporation, § 1333(c), ... refers to 'operations described in subsection (b)' which thereby incorporates the broad scheme of § 1333(b). Obviously Congress purposefully established a system that would apply without regard to physical location.

*Nations*, 483 F.2d at 584 (footnote omitted) (emphasis in original); *see also In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 276 (5th Cir.1974) (declining to read *Rodrigue v. Aetna Casualty & Surety Co.*, 395 U.S. 352, 89 S.Ct. 1835, 23 L.Ed.2d 360 (1969) and § 1333(a)(2) in conjunction with § 1333(b)), *cert. dismissed*, 423 U.S. 886, 96 S.Ct. 163, 46 L.Ed.2d 118 (1975); *Smith v. Falcon Seaboard, Inc.*, 463 F.2d 206, 208 (5th Cir.1972) (per curiam) ("mobility of the situs" criterion in § 1333(b) does not render § 1333(c) constitutionally defective), *cert. denied*, 409 U.S. 1085, 93 S.Ct. 688, 34 L.Ed.2d 672 (1972); *Bertrand v. Forest Corp.*, 441 F.2d 809, 810 (5th Cir.) (per curiam) (LHWCA benefits available for employees injured "as the result of operations conducted on the outer continental shelf"), *cert. denied*, 404 U.S. 863, 92 S.Ct. 106, 30 L.Ed.2d 107 (1971).[9]

The meaning of this line of cases was clarified by the Fifth Circuit in *Barger v. Petroleum Helicopters, Inc.*, 692 F.2d 337, 338 (5th Cir.1982) (helicopter pilot transporting passengers to offshore rig covered by OCSLA), *cert. denied*, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1316 (1983); *see also Kerr–McGee Corp. v. Ma–Ju Marine Services, Inc.*, 830 F.2d 1332, 1335 n. 1 (5th Cir.1987) (employee, injured on charter boat while approaching well site, covered by OCSLA); *Stansbury v. Sikorski Aircraft*, 681 F.2d 948, 951 (5th Cir.) (employee, killed in helicopter crash while returning from inspection of employer's offshore rig, covered by OCSLA), *cert. denied*, 459 U.S. 1089, 103 S.Ct. 573, 74 L.Ed.2d 935 (1982); *Longmire v. Sea Drilling Corp.*, 610 F.2d 1342, 1348 (5th Cir.1980) (offshore drilling employee, injured while stowing anchor chains aboard tender vessel anchored next to rig, covered by OCSLA). The Court of

Appeals for the Ninth Circuit has also adopted this construction of § 1333(b). *Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 812 F.2d 518, 520 (9th Cir.1987) (welder, injured while constructing offshore oil platform, covered by OCSLA). The court noted that:

> [i]n the absence of any other limitation on the face of the statute or in the legislative history of the [OCSLA], section 1333(b) should be construed as extending [LHWCA] coverage to all victims of disabling or fatal injuries sustained while working to develop the mineral wealth of the [outer continental shelf].

*Kaiser Steel Corp.*, 812 F.2d at 522.

The Board's position gets some support from *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). We believe that case is distinguishable, however, and does not indicate a firm position on or foreclosure of the issue. In *Offshore Logistics*, two widows brought wrongful death actions against Air Logistics, the owner and operator of a helicopter which crashed thirty-five miles off the coast of Louisiana, killing their husbands. They raised claims under the OCSLA, the Death on the High Seas Act (DOHSA), and Louisiana state law, arguing that their state law wrongful death claims were preserved under either OCSLA or DOHSA. Regarding OCSLA, the Supreme Court found that § 1333 did not extend to the locale of the accident:

> We do not interpret § 1333 of OCSLA to require or permit us to extend the coverage of the statute to the platform workers in this case who were killed miles away from the platform and on the high seas simply because they were platform workers. Congress determined that the general scope of OCSLA's coverage ... would be determined principally by locale, not by the status of the individual injured or killed.

*Offshore Logistics*, 106 S.Ct. at 2493. In the footnote accompanying this text, how-

---

**9.** It is true that these cases may be distinguishable on their facts. Nevertheless, taken together, they support the principle that situs does not control the application of the LHWCA. *Smith v. Pan Air Corp.*, 684 F.2d 1102 (5th Cir.1982) is not to the contrary.

ever, the Court expressly disclaimed resolution of the issue before us:

> Only one provision of OCSLA superimposes a status requirement on the otherwise determinative OCSLA situs requirement; section 1333(b) makes compensation for the death or injury of an "employee" resulting from certain operations on the outer Continental Shelf payable under the [LHWCA]. We note that because this case does not involve a suit by an injured employee against his employer pursuant to § 1333(b), this provision has no bearing on this case.

*Id.* at 2493 n. 2. *Offshore Logistics* involved § 1333(a)'s (as amended in 1978) extension of "[t]he Constitution and laws" to the subsoil and seabed, artificial islands and other installations and devices of the outer continental shelf. This case involves a § 1333(b) suit by an employee against his employer. LHWCA benefits are specifically provided for by the statute. Curtis was clearly acting within the scope of his employment at the time of the injury.[10]

We believe that our interpretation of 43 U.S.C.A. § 1333(b) is correct in light of the administrative, legislative and judicial policy of resolving doubtful LHWCA coverage questions in favor of coverage. *See Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719–20, 100 S.Ct. 2432, 2435–36, 65 L.Ed.2d 458 (1980) (1972 LHWCA amendments supplement, rather than supplant, state law); *Northeast Marine Terminal Co. v. Caputo*, 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977) (broad language of 1972 amendments suggests courts should take expansive view of LHWCA coverage to avoid harsh and incongruous results); *Calbeck v. Travelers Insurance Co.*, 370 U.S. 114, 124, 82 S.Ct. 1196, 1202, 8 L.Ed.2d 368 (1962) (LHWCA designed to insure remedy for all injuries sustained by employees on navigable waters and to avoid

uncertainty as to source of remedy); *Novelties Distribution Corp. v. Molee*, 710 F.2d 992, 995 (3d Cir.1983) ("maritime employment" within LHWCA § 902(3) must be construed broadly), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1014, 79 L.Ed.2d 244 (1984). We agree with the Fifth Circuit position that the "but for" test is appropriate in establishing whether Curtis's injury occurred as a result of operations on the outer continental shelf. *Barger*, 692 F.2d at 340; *see also Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir.1985) (injury was not caused by outer continental shelf operations and therefore fell outside scope of OCSLA); *Stansbury*, 681 F.2d at 951 ("but for" outer continental shelf operations, decedent would not have been killed in helicopter crash). "But for" his travelling to the *New Era* for the purpose of conducting "operations" within § 1333(b), employee Curtis would not have sustained injuries in the automobile accident.

We hold that the Board erred in determining that Curtis's claim fell outside the intended scope of the OCSLA. We will therefore grant the petition, reverse the Board's order denying coverage under the OCSLA, and remand to the Board for further proceedings consistent with this opinion.

---

**10.** We also find *Herb's Welding, Inc. v. Gray*, 470 U.S. 414, 105 S.Ct. 1421, 84 L.Ed.2d 406 (1985), distinguishable. In *Herb's Welding, Inc.* the employee, a welder, was working on a fixed platform in Louisiana state waters when the injury occurred. The Supreme Court held that because Gray's employment was not inherently "maritime," he did not qualify for benefits under the LHWCA. *Herb's Welding, Inc.*, 470 U.S.

at 427, 105 S.Ct. at 1429. The Court specifically refused to address the issue of whether the LHWCA could be applied to Gray under § 1333(b) of the OCSLA. *Id.* at 426 n. 12, 105 S.Ct. at 1428 n. 12. On remand, the Fifth Circuit also specifically declined to address this issue. *Herb's Welding v. Gray*, 766 F.2d 898, 900 (5th Cir.1985). The issue thus appears to be open.