**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LUISA VALLADOLID,
                    *Petitioner,*

v.

PACIFIC OPERATIONS OFFSHORE,
LLP; INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA; and
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
                    *Respondents.*

No. 08-73862

BRB No. 07-965

OPINION

On Petition for Review of an Order
of the Benefits Review Board

Argued and Submitted
March 9, 2010—San Francisco, California

Filed May 13, 2010

Before: Stephen Reinhardt and Jay S. Bybee, Circuit Judges,
and James V. Selna,* District Judge.

---

*The Honorable James V. Selna, United States District Judge for the
Central District of California, sitting by designation.

**COUNSEL**

Timothy K. Sprinkles, Law Office of Charles D. Naylor, San Pedro, California, and Joshua T. Gillelan II, Longshore Claimants' National Law Center, Washington, DC, for the petitioner.

Michael W. Thomas, Laughlin, Falbo, Levy & Moresi LLP, San Francisco, California, for the respondents.

<hr>

## OPINION

SELNA, District Judge:

In this case, we consider whether an employee must be injured on the outer continental shelf to be eligible for workers' compensation benefits under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq*. The two other circuits that have considered this question have reached conflicting conclusions.

I.

Decedent Juan Valladolid worked for Pacific Operations Offshore as a roustabout, stationed primarily on one of Pacific Operations's two offshore drilling platforms. He was killed, however, on the grounds of Pacific Operations's onshore oil-processing facility when he was crushed by a forklift. His widow seeks workers' compensation benefits under OCSLA and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq*.

Pacific Operations runs two offshore oil drilling platforms, the Hogan and the Houchin, both located more than three miles off the coast of California. Valladolid spent roughly 98% of his working time aboard the Hogan. As a roustabout, his work primarily consisted of cleaning and maintenance duties: picking up litter, emptying trash cans, washing decks, painting, fixing equipment, and helping load and unload the platform crane.

Valladolid also spent time working at Pacific Operations's onshore oil flocculation facility, located on the California

coast just 250-300 feet from the shore.[1] This facility, referred to as La Conchita, received crude oil slurry from the Hogan and the Houchin via pipeline. The slurry would then be processed, separating its oil, gas, water, and solid constituents, with the oil and gas routed off site through pipelines to third parties. Valladolid performed maintenance duties at La Conchita, including painting, sandblasting, weed-pulling, cleaning drain-culverts, and operating a forklift.

Crew members traveled to and from the offshore platforms on a crew boat departing from the Casitas Pass Pier, located about three miles from La Conchita. The crew boat was also used to ferry equipment and supplies and to remove scrap metal—pieces of old pipe, storage tanks, catwalks, chain, and cables—from the platforms. The scrap metal was ferried to the Casitas Pass Pier, where it was loaded into trucks and driven to La Conchita. There it was dumped at various spots on the property. Neither the loading crew at the pier nor the truck drivers were employed by Pacific Operations.

One of Valladolid's duties at La Conchita was to "centralize" the scrap metal from the various locations so that third-party scrap metal vendors could pick the metal up and haul it away. Valladolid would use a forklift to retrieve the scattered metal and transport it to a central location. The consolidation process was performed roughly once every two years. Valladolid was killed during this process when he was crushed by a forklift.

Petitioner, Valladolid's widow, received death benefits under California's workers' compensation scheme. She also filed a claim for benefits under the LHWCA, both directly under the LHWCA and via the OCSLA extension to outer

---

[1]Pacific contends that the facility is actually 250-300 *yards* from the ocean. Because our decision does not turn on the difference between 250-300 feet and 250-300 yards, we assume for the purposes of this appeal that Petitioner's measure is correct.

continental shelf workers. After informal proceedings before the local district director of the Department of Labor's Office of Workers' Compensation Programs, the matter was referred to an Administrative Law Judge ("ALJ").

The ALJ denied Petitioner's OCSLA claim on the grounds that Valladolid's injury had occurred outside the geographic situs of the outer continental shelf. The ALJ denied the LHWCA claim on two grounds: (1) Valladolid was not engaged in maritime employment, and (2) he was not injured on a maritime situs. The Benefits Review Board ("BRB") upheld the ALJ's denial of the OCSLA benefits under the "situs-of-injury" test, and affirmed the denial of LHWCA benefits on the maritime situs ground. The BRB did not reach the maritime employment issue.

## II.

We have jurisdiction to review the final orders of the BRB under 33 U.S.C. § 921(c). We review the BRB's decisions for errors of law and adherence to the substantial evidence standard. *Pedroza v. BRB*, 583 F.3d 1139, 1143 (9th Cir. 2009). The BRB's decisions on questions of law are reviewed de novo. *M. Cutter Co. v. Carroll*, 458 F.3d 991, 993 (9th Cir. 2006). Because the BRB is not a policymaking body, its constructions of the LHWCA are not entitled to special deference. *Dyer v. Cenex Harvest States Coop.*, 563 F.3d 1044, 1047 (9th Cir. 2009). However, the Court must "respect the [BRB's] interpretation of the statute where such interpretation is reasonable and reflects the policy underlying the statute." *Christensen v. Stevedoring Servs. of Am.*, 557 F.3d 1049, 1052 (9th Cir. 2009) (quoting *McDonald v. Dir., Office of Workers' Comp. Programs*, 897 F.2d 1510, 1512 (9th Cir. 1990)).

## III.

[1] The LHWCA provides compensation for the disability or death of a maritime employee "if the disability or death

results from an injury occurring upon the navigable waters of the United States." 33 U.S.C. § 903(a). Under the OCSLA workers' compensation provision, LHWCA benefits are extended to:

> [the] disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or involving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf.

43 U.S.C. § 1333(b). The outer continental shelf is comprised of "all submerged lands lying seaward and outside of the area of lands beneath navigable waters"—that is, submerged lands lying outside the territorial jurisdiction of the states. *Id.* § 1331(a); *see id.* § 1301(a)(2). State jurisdiction over offshore lands generally extends three miles from the coast line, though in certain cases not relevant here, it may extend further. *See id.* § 1301(a)(2).

**[2]** Petitioner contends that the BRB impermissibly applied a "situs-of-injury" requirement for OCSLA workers' compensation, denying her claim because her husband was killed on shore and not on the outer continental shelf. This is an issue of first impression in the Ninth Circuit. Two other circuits presented with this exact issue have reached conflicting conclusions.

In *Curtis v. Schlumberger Offshore Service, Inc.*, 849 F.2d 805 (3d Cir. 1988), the Third Circuit rejected the situs-of-injury test and held that a claimant need only satisfy a "but for" test in establishing that the injury occurred "as the result of" operations on the outer continental shelf. *Id.* at 809-11. Accordingly, an employee injured in a car accident on his way to meet a helicopter that would take him to an offshore

platform was eligible for OCSLA disability benefits. *Id.* at 806, 811.

However, in *Mills v. Director, Office of Workers' Compensation Programs*, 877 F.2d 356 (5th Cir. 1989) (en banc), the Fifth Circuit adopted a situs-of-injury requirement for OCSLA claims. Under *Mills*, an OCSLA claimant must show that the injury occurred on an outer continental shelf platform or on the waters above the outer continental shelf, in addition to satisfying the "but for" test. *Id.* at 362; *see also Becker v. Tidewater, Inc.*, 586 F.3d 358, 366-67 (5th Cir. 2009); *Pickett v. Petroleum Helicopters, Inc.*, 266 F.3d 366, 368 (5th Cir. 2001); *Sisson v. Davis & Sons, Inc.*, 131 F.3d 555, 558 (5th Cir. 1998). Thus, a welder injured during the onshore construction of a platform destined for the outer continental shelf was not eligible for OCSLA disability benefits. *Mills*, 877 F.3d at 357, 362.

## A.

Aside from the two conflicting Court of Appeals decisions, there is little precedent on the question before us. The Supreme Court touched on the question in passing in *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207 (1986). The relevant issue there was whether a choice-of-law provision in OCSLA, 43 U.S.C. § 1333(a)(2)(A), applied so as to allow the widows of employees killed in a helicopter crash to pursue a wrongful death action under state law. *Id.* at 209. Section 1333(a)(2)(A) applies the law of the nearest state as surrogate federal law for "the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon." 43 U.S.C. § 1333(a)(2)(A). The Court declined to extend this provision to an accident occurring on the waters above the outer continental shelf, finding that "Congress determined that the general scope of OCSLA's coverage . . . would be determined principally by locale, not by the status of the individual injured or killed." *Tallentire*, 477 U.S. at 219. In an accompanying footnote, the Court added:

> Only one provision of OCSLA superimposes a status requirement on the otherwise determinative OCSLA situs requirement; § 1333(b) makes compensation for the death or injury of an "employee" resulting from certain operations on the Outer Continental Shelf payable under the Longshoremen's and Harbor Workers' Compensation Act. We note that because this case does not involve a suit by an injured employee against his employer pursuant to § 1333(b), this provision has no bearing on this case.

*Id.* at 219 n.2.

Pacific Operations contends that this footnote is dispositive of this case. We, on the other hand, agree with the Third Circuit that *Tallentire* is simply not on point. *See Curtis*, 849 F.2d at 810. *Tallentire* dealt with the applicability of the § 1333(a)(2)(A) choice-of-law provision, not the § 1333(b) benefits provision, as explicitly noted by the Court. 477 U.S. at 219 n.2 ("[Section 1333(b)] has no bearing on this case"). The Court's footnote about § 1333(b) is textbook dictum.

Of course, we treat the considered dicta of the Supreme Court with greater weight and deference "as prophecy of what that Court might hold." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (en banc) (quoting *Zal v. Steppe*, 968 F.2d 924, 935 (9th Cir. 1992) (Noonan, J., concurring and dissenting)). They are not to be "blandly shrug[ged] . . . off because they were not a holding." *Zal*, 968 F.2d at 935 (Noonan, J., concurring and dissenting). We do not blindly, however, follow an unconsidered statement simply because it was uttered by the Supreme Court. *See Montero-Camargo*, 208 F.3d at 1132 n.17. As the Court itself has noted, "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. . . . [T]heir possible bearing on all other cases is seldom completely investigated." *Humphrey's Executor v.*

*United States*, 295 U.S. 602, 627 (1935) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399-400 (1821)).

For the following reasons, we are convinced that the footnote in *Tallentire* is of the unconsidered variety not entitled to special deference. The § 1333(b) benefits issue was not before the Court, was not briefed by the parties, and had no relevance to the case before it. *See Tallentire*, 477 U.S. at 219 & n.2. There is no analysis or reasoning behind the Court's statement that a situs requirement applies to § 1333(b). *See id.* These circumstances strip the dictum of any predictive or persuasive value. *See District of Columbia v. Heller*, 128 S. Ct. 2783, 2816 n.25 (2008).

Moreover, the import of the Court's statement to the case at hand is debatable. The Court spoke generally of an OCSLA "situs" requirement, but it is not clear that the Court's statement requires a "situs-of-injury," as opposed to a "situs-of-operations," test. Section 1333(b) applies only to injuries occurring "as the result of operations conducted on the outer Continental Shelf." 43 U.S.C. § 1333(b). Clearly, the *operations* must be on the outer continental shelf. *See Herb's Welding v. Gray* (*Herb's Welding II*), 766 F.2d 898, 900 (5th Cir. 1985) (holding that an injury occurring on an oil platform in state waters is not eligible for OCSLA benefits). It is less clear—and the *Tallentire* footnote does not illuminate the issue—that the *injury* must also be on the outer continental shelf.[2]

---

[2]The *Mills* court also found support for its situs-of-injury test in *Herb's Welding, Inc. v. Gray* (*Herb's Welding I*), 470 U.S. 414 (1985). *Mills*, 877 F.2d at 361. The issue in *Herb's Welding I* was whether a worker on a platform in state waters was engaged in "maritime employment" so as to entitle him to benefits under the LHWCA. 470 U.S. at 415-16. The Fifth Circuit found significance in the Court's passing comment that "the inconsistent coverage here results primarily from the explicit geographic limitation to [OCSLA's] incorporation of the LHWCA. . . . [T]hat statute draws a clear geographic boundary that will predictably result in workers moving in and out of coverage." *Id.* at 427. As with *Tallentire*, however, the scope

The Ninth Circuit cases cited by the parties are similarly unhelpful. In *Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 812 F.2d 518 (9th Cir. 1986), a pipefitter/welder was injured while working on an outer continental shelf platform and sought benefits under OCSLA. *Id.* at 520. The issue was whether he was an eligible "employee" even though his work was "primarily land based." *Id.* at 521-22. This Court, finding him eligible for § 1333(b) benefits, stated that:

> [i]n the absence of any other limitation on the face of the statute or in the legislative history of [OCSLA], section 1333(b) should be construed as extending [LHWCA] coverage to all victims of disabling or fatal injuries sustained while working to develop the mineral wealth of the OCS [outer continental shelf].

*Id.* at 522. This passage does not directly apply to the situs issue, as it came within the context of whether the claimant met the § 1333(b) "employee" requirement. *Id.* at 522-23.

In *A-Z International v. Phillips*, 179 F.3d 1187 (9th Cir. 1999), this Court reviewed a BRB decision vacating an ALJ's order recommending sanctions for a fraudulent OCSLA claim. *Id.* at 1189. In the underlying case, the ALJ had found the claimant ineligible for OCSLA benefits because, contrary to his allegation, his injury did not occur on an offshore platform and he therefore failed to satisfy the situs-of-injury test. *Id.* That decision was never appealed. *Id.* However, on review of the subsequent sanctions order, this Court stated in a footnote accompanying the recitation of the facts:

---

of § 1333(b) was never considered, rendering this passage unhelpful on the issue before us. In fact, the Court explicitly declined to consider whether the worker was entitled to OCSLA benefits even though he had argued the issue throughout the proceedings. *Id.* at 426 n.12.

> The situs requirement is a predicate for coverage under OCSLA. *See* 43 U.S.C. § 1333 (1994); *see also Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 219 (1986) (noting that "Congress determined that the general scope of OCSLA's coverage . . . would be determined principally by locale").

*Id.* at 1189 n.1. We do not find this statement binding or especially persuasive, given that the situs issue was neither argued by the parties nor considered by the Court because the claimant never appealed the decision on the situs question. *Id.* at 1189. The issue in *A-Z International* was a procedural question about an ALJ's contempt power. *Id.* The comment on the situs issue was gratuitous language appended to the statement of facts and not a considered statement of the law.

### B.

Absent clear precedent to guide us on the situs-of-injury issue, we are presented with a straightforward question of statutory construction. "The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *Robinson v. United States*, 586 F.3d 683, 686 (9th Cir. 2009) (quoting *United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999)). We first look to the plain language of the statute, which controls "unless its application leads to unreasonable or impracticable results." *Id.* at 687 (quoting *Daas*, 198 F.3d at 1174). The plain meaning is determined with an eye towards the context of the language and design of the statute as a whole. *Id.* "It is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose." *United States v. Gallenardo*, 579 F.3d 1076, 1085 (9th Cir. 2009) (quoting *United States v. Nader*, 542 F.3d 713, 720 (9th Cir. 2008)).

There are two distinct arguments that OCSLA's language supports a situs-of-injury requirement. The first argument—the route taken by the Fifth Circuit in *Mills*—is that § 1333(b)

itself contains the situs-of-injury requirement. *See* 877 F.2d at 858-59. The second argument—advanced by Pacific Operations—is that the situs requirement of § 1333(a) applies to OCSLA as a whole. For the reasons discussed below, we find neither argument persuasive and find the statute unambiguous in not requiring a situs-of-injury test.

**[3]** OCSLA was enacted in 1953 to establish federal jurisdiction over the submerged lands beyond the jurisdiction of the states in order to promote the orderly exploitation of minerals lying below the seabed. *See Rodrigue v. Aetna Cas. & Sur. Co.*, 395 U.S. 352, 355-56 (1969); Outer Continental Shelf Lands Act, Pub. L. No. 83-212, 67 Stat. 462, 462 (1953); S. Rep. No. 83-411, at 2 (1953). As part of this endeavor, Congress needed to establish a body of substantive law to cover the outer continental shelf. *See Rodrigue*, 395 U.S. at 355-56; S. Rep. No. 83-411, at 2. Section 4 of OCSLA, codified at 43 U.S.C. § 1333, set forth the laws to be applied. § 4, 67 Stat. at 462-63. For example, subsection (a) establishes the substantive civil and criminal law applying to the outer continental shelf, artificial islands, and platforms fixed to the seabed. 43 U.S.C. § 1333(a). Subsection (c) applies the National Labor Relations Act ("NLRA") to "any unfair labor practice . . . occurring upon any artificial island, installation, or other device referred to in subsection (a)." *Id.* § 1333(c). Subsection (d) provides the Coast Guard with the authority to promulgate regulations governing the safety equipment, warning devices, and other safety matters on artificial islands and fixed platforms. *Id.* § 1333(d). Subsection (e) extends the Army's authority to prevent obstruction of the navigable waters to fixed platforms on the outer continental shelf. *Id.* § 1333(e).

**[4]** Section 1333(b) provides workers' compensation benefits for "any injury occurring *as the result of* operations conducted on the outer Continental Shelf." *Id.* § 1333(b) (emphasis added). The situs-of-operations requirement is clear; the *operations* must be conducted on the outer conti-

nental shelf. However, the only limitation on the *injury* is that it be "the result of" operations on the outer continental shelf. As many courts have recognized, the phrase "as the result of" simply denotes causation. *See, e.g.*, *Brown v. Gardner*, 513 U.S. 115, 119 (1994) ("as a result of" in veterans' benefits statute indicates causation with no fault requirement); *Murakami v. United States*, 398 F.3d 1342, 1351-52 (Fed. Cir. 2005) ("as a result of" in federal claims statute indicates causation with no temporal limitation); *Black Hills Aviation, Inc. v. United States*, 34 F.3d 968, 975 (10th Cir. 1994) ("as a result of" in Department of Defense regulation means "caused by" rather than "connected with"). Thus, the most natural reading of § 1333(b) provides coverage for any injury *caused by* outer continental shelf operations regardless of where the injury occurred.

The *Mills* court found ambiguity in § 1333(b) by focusing on the word "operations." According to *Mills*, because the *operations* must occur on the outer continental shelf, the *injury* must also occur on the outer continental shelf: "activity conducted off the OCS, even though related to OCS mineral extraction, does not satisfy § 1333(b)." 877 F.2d at 359. However, this interpretation fails to acknowledge the connecting phrase "as the result of." The results of an operation may regularly extend beyond its immediate physical location. When a pitcher hits a batter with a pitch, the batter's injury is the result of "operations" on the mound. The Fifth Circuit's attempt to unearth ambiguity in § 1333(b) by ignoring a key phrase does not persuade us.[3]

---

[3]Our position finds support in *Murakami*, a Federal Circuit decision interpreting similar language in a reparations statute. *Murakami* involved a claim under the Civil Liberties Act of 1988, which provided a redress payment for individuals who were "deprived of liberty or property *as a result of*" the internment of Japanese-Americans during World War II. 398 F.3d at 1344 (emphasis added); 50 U.S.C. app. § 1989b-7(2). The claimant challenged a regulation categorically denying payments to individuals born after the restraints on travel were lifted. *Murakami*, 398 F.3d at 1347-

Neither are we persuaded that the situs limitations in the other provisions of § 1333 indicate a situs-of-injury requirement for subsection (b). The *Mills* majority felt that these limitations reflected a Congressional intent to limit the reach of the statute to occurrences on the outer continental shelf as part of a "gap-filling" purpose. 877 F.3d at 359-60. We, however, find the *Mills* dissent to be more persuasive: the absence of a situs-of-injury requirement in subsection (b), in light of the explicit limitations in the other subsections, reflects an intent not to limit that subsection in the same manner. *Id.* at 362 (Duhe, J., dissenting). The different treatment of subsection (b) is quite clear, given that it is the only subsection not to incorporate the situs definition of subsection (a). *See* 43 U.S.C. § 1333. This distinction ought to be given effect.

Moreover, a comparison of the language of the different provisions strongly implies that subsection (b)'s coverage extends beyond the outer continental shelf. Subsection (c) applies the NLRA to unfair labor practices "occurring *upon* any artificial island, installation, or other [fixed platform]," *id.* § 1333(c), while subsection (b) provides coverage for injuries "occurring *as the result of* operations conducted on the outer Continental Shelf," *id.* § 1333(b) (emphasis added). Congress had the ability to craft a situs-of-injury requirement—and did so within the very same section of the statute—yet left it out of subsection (b). *See also* Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 903(a) (limiting coverage to injuries "occurring *upon* the navigable waters of the United States" (emphasis added)). We should not read one in.

---

48. The Federal Circuit rejected this categorical exclusion, noting that the result of the travel restrictions could, in certain cases, extend beyond the date of their repeal. *Id.* at 1352-53. *Murakami* teaches that "as a result of" contains no temporal limitation; likewise, in this case, we see no reason to import a spatial one. If travel restrictions can cause an injury after their repeal, similar logic supports the view that operations on the outer continental shelf can cause injury outside the outer continental shelf.

**[5]** Accordingly, we find that the language of § 1333(b) is unambiguous in not including a situs-of-injury requirement. Indeed, our interpretation of § 1333(b) is confirmed by a Fifth Circuit decision, *Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492, 500 (5th Cir. 2002), *overruled on other grounds*, *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778 (5th Cir. 2009) (en banc), subsequent to *Mills*. *Demette* held that "section 1333(b) contains only a status require-ment." *Id.* at 500 n.29. According to *Demette*, the situs-of-injury requirement derives from § 1333(a)(1), which "creates a 'situs' requirement for the application of other sections of the OCSLA, including sections 1333(a)(2) and 1333(b)." *Id.* at 496. As *Demette* explains, "[i]n order for the LHWCA to apply by virtue of section 1333(b), . . . the injured worker must satisfy the 'status' requirement of section 1333(b) as well as the situs requirement of section 1333(a)(1)." *Id.* at 498. This is, however, a misstatement of *Mills*'s holding, which clearly finds a situs-of-injury requirement in the lan-guage of § 1333(b).[4] *Mills*, 877 F.2d at 362. This disagree-ment among Fifth Circuit panels underscores the extent to which *Mills* departed from the plain language of § 1333(b) and confirms what we find fairly obvious—a situs-of-injury test is unambiguously absent from § 1333(b).

The legislative history does not indicate otherwise. The *Mills* court interpreted § 1333 as a "gap-filler," solely intended to fill a void in substantive law due to the fact that the outer continental shelf lies beyond state jurisdiction. *See Mills*, 877 F.2d at 358. Therefore, *Mills* reasoned, no provi-sion of OCSLA was intended to apply outside that situs. The

---

[4]In fact, *Demette*'s interpretation of *Mills* would put that decision in direct conflict with the Supreme Court's decision in *Tallentire*. In an effort to avoid overruling its own precedent applying OCSLA to helicopter crashes on the waters above the outer continental shelf, *Mills* defined § 1333(b) as applying to "injury or death on an OCS platform or the waters above the OCS." 877 F.2d at 362. *Tallentire*, however, expressly held that § 1333(a) does not apply to the waters above the outer continen-tal shelf. 477 U.S. at 219. Had *Mills* pulled its situs-of-injury test from § 1333(a), its holding would be inconsistent with *Tallentire*.

opinion cited a statement during debate on the floor of the Senate that "[OCSLA] is legislatively joined with the Submerged Lands Act . . . . [T]he Submerged Lands Act deals with lands within State boundaries, while this bill [OCSLA] concerns itself with the areas seaward of such boundaries." *Id.* at 359 n.6 (quoting 99 Cong. Rec. 6962 (daily ed. June 22, 1953) (statement of Sen. Cordon)). The House Conference Report also notes that under OCSLA "certain Federal laws are made applicable *to the [outer continental shelf] area* such as the [LHWCA]." H.R. Rep. No. 83-1031, at 12 (1953) (Conf. Rep.) (emphasis added).

**[6]** However, certain legislative history cuts against the gap-filing interpretation of § 1333(b). In particular, a provision allowing benefits only "if recovery for such disability or death through workmen's compensation proceedings is not provided by State law," was deleted from the original version of Section 4(c), which became § 1333(b). S. Rep. No. 83-411, at 16 (1953). The Senate committee explained that "[i]t was deemed inadvisable to have the [LHWCA] apply only if there is no applicable State law. By this amendment, all workers on the outer shelf not already protected under laws respecting seamen are protected by the [LHWCA]." *Id.* at 23. The deletion of this anti-overlap provision gives a clear indication that Congress intended to provide LHWCA coverage regardless of the applicability of state law, seriously undercutting the conception of § 1333(b) as a gap-filler.[5]

---

[5]*Mills* attempts to explain away the deletion, arguing that it "indicates that, at most, Congress was prepared to tolerate overlapping federal and state workers' compensation coverage on the OCS itself. But the proviso's deletion does not justify overlapping coverage for employees whose feet are planted firmly on state soil." *Mills*, 877 F.2d at 360. The Fifth Circuit essentially concedes that § 1333(b) was not intended to be a gap-filler. Its summary assertion that Congress was only willing to "tolerate" overlapping coverage on the outer continental shelf and nowhere else is supported by no more than general statements by individual legislators that OCSLA "concerns itself" with the outer continental shelf.

This makes sense, given that at the time of OCSLA's enactment the workers' compensation laws of most relevant states provided coverage for injuries occurring outside state jurisdiction if the employment contract was made within the state. *See, e.g.*, *Ohlhausen v. Sternberg Dredging Co.*, 218 La. 677, 680-81 (1951) (applying Louisiana workers' compensation statute to injury occurring in Arkansas); *Maryland Cas. Co. v. Brown*, 131 Tex. 404, 406, 408 (1938) (holding that "an injury 'outside the state' [of Texas] is compensable, regardless of where it may occur" and noting that "practically every state in the Union has made provision for extension of the benefits of compensation laws to employees injured 'outside the state' "); *Alaska Packers' Ass'n v. Indus. Accident Comm'n of Cal.*, 1 Cal. 2d 250, 257-58 (1934) (holding that California workers' compensation law may apply to injury sustained in Alaska). Because most state workers' compensation laws applied extraterritorially at the time, there was generally no gap to fill.

Finally, *Mills* points to an exchange among senators during the committee hearings where the senators concluded that a worker on a platform above state waters would be covered by state workers' compensation laws even if the drilling slanted into the outer continental shelf. *Outer Continental Shelf: Hearings on S. 1901 Before the Comm. on Interior and Insular Affairs*, 83d Cong. 15-16 (1953) ("*OCS Comm. Hearings*"). The *Mills* majority relied on this exchange as evidence of intent that the site of the injury would control coverage. 877 F.2d at 359. The reliance is unwarranted for two reasons. First, the senators were debating the early version of the bill that contained the anti-overlap provision that was later deleted. *See OCS Comm. Hearings*, *supra*, at 29-30. At that time, the issue of whether state law applied was quite significant as it would preclude OCSLA coverage. But the exchange loses its significance in light of the subsequent deletion of the anti-overlap provision.[6]

---

[6]In any case, the senators only concluded that state law applied on state soil and never considered whether LHWCA benefits might also apply. *See id.* at 15-16; *Mills*, 877 F.2d at 363 (Duhe, J., dissenting).

Second, the exchange came during the discussion of Section 4(a) of the bill, the federal jurisdiction and choice-of-law provision later codified at § 1333(a). *Id.* at 8-16. The committee was not yet considering the text of Section 4(c), the workers' compensation provision. *See id.* at 29. The slant-drilling hypothetical was part of a discussion about the applicability of substantive law in general. *See id.* at 13-17. Workers' compensation was simply an example used, along with marriage and domestic laws, to illustrate the bounds of the choice-of-law provision. *See id.* The usefulness of this exchange in relation to the actual text of Section 4(c) is minimal.

Considered as a whole, the legislative history is inconclusive on the situs issue, other than establishing that § 1333(b) was not intended to simply fill a gap in workers' compensation law. There is certainly nothing clear enough to persuade us that our reading of the statute is incorrect.

**[7]** Nor are we persuaded that policy considerations compel the addition of a situs-of-injury requirement. Pacific Operations points out the supposed absurdity of workers receiving extra coverage on shore because they "fortuitously" work to further outer continental shelf operations. Pacific Operations also complains about the burden on employers having to purchase coverage under both state and federal schemes.

First, Congress clearly contemplated overlapping coverage with the deletion of the anti-overlap provision in § 1333(b) and has enacted overlapping coverage in other related contexts. *See* 33 U.S.C. § 903(a) (applying LHWCA coverage to shoreside activities); *Sun Ship, Inc. v. Pennsylvania*, 447 U.S. 715, 719-20 (1980). Second, the supposed absurdity in coverage is a natural consequence of line-drawing, which is Congress's decision, not ours. Coverage is just as absurd under the line drawn by *Mills*: an employee is covered for a helicopter crash 3.1 miles from shore, but not 2.9 miles, even though the activity and risk is identical. Finally, Congress may have had good reason to apply uniform coverage across the full

range of activities of an outer continental shelf worker—including work on a platform, in transit to and from a platform, on pipelines between platforms and shore, or at onshore facilities crucial to the mineral extraction process—so that a worker does not step in and out of coverage.

**[8]** In any case, it is not necessary to speculate about policy, as the language of § 1333(b) is clear in not containing a situs-of-injury requirement. "[I]f Congress' coverage decisions are mistaken as a matter of policy, it is for Congress to change them. We should not legislate for them." *Herb's Welding I*, 470 U.S. at 427. Because the language is unambiguous and the legislative history and policy considerations do not compel a contrary result, we find that § 1333(b) does not contain a situs-of-injury requirement.

## C.

Pacific Operations presents a different argument, contending that § 1333(a) sets forth a situs requirement that is intended to apply to all of § 1333, including subsection (b). This is a novel argument; it has no support in either *Mills*, the Fifth Circuit decision, or *Curtis*, the Third Circuit decision. The only case supporting the proposition is *Demette*, the Fifth Circuit decision that misstates *Mills*'s holding.

**[9]** Section 1333(a)(1) provides that:

> The Constitution and laws and civil and political jurisdiction of the United States are extended to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, . . . to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State.

**[10]** 43 U.S.C. § 1333(a)(1). This subsection simply provides for federal law and jurisdiction over the situs. Nothing in the

language purports to limit the applicability of the Constitution, federal laws, or jurisdiction to the outer continental shelf, nor is there anything applying the subsection (a)(1) situs to any other parts of § 1333.

Section 1333(a)(2) does not provide a basis for an overarching situs requirement either. It states that:

> the civil and criminal laws of each adjacent State . . . are declared to be the law of the United States for that portion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf.

*Id.* § 1333(a)(2)(A). Again, nothing purports to limit state law to the subsection (a) situs, nor to apply that situs to the other § 1333 subsections.

This is consistent with the structure of § 1333. Each subsection has its own situs definition, some broader and some narrower than subsection (a)'s. For example, the subsection (c) situs is narrower, applying the NLRA to unfair labor practices "occurring upon any artificial island, installation, or other device referred to in subsection (a)," but not to occurrences on the subsoil or seabed. *Id.* § 1333(c). The subsection (d) situs is broader, allowing Coast Guard safety regulations for "the artificial islands, installations, and other devices referred to in subsection (a) of this section *or on the waters adjacent thereto.*" *Id.* § 1333(d) (emphasis added). As the Supreme Court held in *Tallentire*, § 1333(a) does not apply to the waters above the outer continental shelf. 477 U.S. at 219. If subsection (a) was intended to be a strict situs requirement for the entire statute, there would be no need for individualized situs tests for each subsection, much less ones that are inconsistent with subsection (a).

Moreover, each subsection expressly incorporates a portion of the subsection (a) situs in their own situs definitions—with the significant exception of subsection (b), the workers' compensation provision. If subsection (a) applied to all other provisions by its own terms, there would be no need for those provisions to independently incorporate parts of it. And because subsection (a) is referenced in each subsection *except* subsection (b), the obvious conclusion is that subsection (b) was not intended to be limited by subsection (a).

The legislative history of § 1333 also conclusively demonstrates that subsection (a) was not intended to limit the other provisions. Subsection (b) was originally a jurisdictional provision, providing federal courts with "original jurisdiction of cases and controversies *arising out of or in connection with* any operations conducted on the outer Continental Shelf." Pub. L. No. 83-212, § 4(b), 67 Stat. 462, 463 (1953) (emphasis added). This was clearly meant to encompass more than just occurrences on the subsection (a) situs.[7]

The theory that subsection (a) provides a situs requirement applicable to all of § 1333 is simply inconsistent with its plain language, statutory structure, and legislative history. Subsection (a) merely extends federal jurisdiction and federal and state law to the outer continental shelf. It has no applicability beyond that purpose, other than to provide a situs definition that several other provisions expressly incorporate. Because subsection (b) does not incorporate (a), that provision has no bearing on our analysis.

[11] We hold that § 1333(b) may apply to injuries occur-

---

[7]When the statute was amended in 1978 to merge subsection (b) with the workers' compensation provision in subsection (c), the House Conference Report stated that "this amendment involves no change in existing law. It was not the intent . . . to alter in any way the existing coverage of the [LHWCA]." H.R. Rep. 95-1474, at 81 (1978) (Conf. Rep.), *reprinted in* 1978 U.S.C.C.A.N. 1674, 1680.

ring outside the situs of the outer continental shelf, so long as they occur "as the result of operations conducted on the outer continental shelf."

## D.

We do not, however, find that Congress intended to enact a simple "but for" test in covering injuries that occur "as the result of" outer continental shelf operations. Injuries with a tenuous connection to the outer continental shelf are not covered. *Cf. Black Hills Aviation*, 34 F.3d at 975 ("as a result of" requires more than just a "connection with"). Thus, we do not agree with, and decline to adopt, the Third Circuit's decision in *Curtis* to the extent that it requires only a "but for" test of causation. *See* 849 F.2d at 811.

**[12]** Instead, we adopt the following test: the claimant must establish a substantial nexus between the injury and extractive operations on the shelf. To meet the standard, the claimant must show that the work performed directly furthers outer continental shelf operations and is in the regular course of such operations. An injury sustained during employment on the outer continental shelf itself would, by definition, meet this standard. However, an accountant's workplace injury would not be covered even if related to outer continental shelf operations, while a roustabout's injury in a helicopter en route to the outer continental shelf likely would be. We leave more precise line-drawing to the specific factual circumstances of later cases.

This is consistent with the pre-*Mills* Fifth Circuit interpretation of § 1333(b), which we endorse. Prior to *Mills*, the Fifth Circuit had long held that § 1333(b) applied to injuries occurring outside the outer continental shelf. *See Nations v. Morris*, 483 F.2d 577 (5th Cir. 1973) ("OCSLA, in its incorporation of [the LHWCA], did not speak in terms of injuries occurring *on* such platforms so as to distinguish them from those *off* the platforms . . . Obviously Congress purposefully established a

system that would apply without regard to physical location."). However, it required a more direct connection than simple "but for" causation. In *Herb's Welding II*, the Fifth Circuit denied OCSLA benefits to a welder working on a platform in state waters, even though it was connected by pipeline to platforms on the outer continental shelf, upon which the welder spent approximately 25% of his time. 766 F.2d at 899-900. The court reasoned that the accident would have occurred regardless of whether the employer had the outer continental shelf rigs. *Id.* at 900. It contrasted helicopter crash cases where the employee's "work had furthered the operations of a fixed rig on the shelf and was in the regular course of extractive operations on the shelf." *Id.*

In *Mills v. Director, Office of Workers' Compensation Programs*, 846 F.2d 1013 (5th Cir. 1988), *rev'd en banc*, 877 F.2d 356 (5th Cir. 1989), the three-judge panel decision later reversed by the *Mills* en banc panel, the court clarified the scope of the then-prevailing "but for" test in the Fifth Circuit:

> Our decision does not extend LHWCA coverage to those whose connection with operations on the Shelf is tenuous. Workers like [the welder in *Herb's Welding II*] whose work is only indirectly connected with the Shelf will still not be covered. The 'but for' test this Circuit has adopted is not the simple '*causa sine qua non*' test of tort law, but includes the requirement that the claimant show a nexus between the work being done and operations on the shelf similar to the proximate cause test in tort law; it requires that the work "further[s] the operation of a fixed rig on the shelf *and [is] in the regular course of extractive operations on the shelf*."

*Id.* at 1015 (quoting *Herb's Welding II*, 766 F.2d at 900) (footnote omitted). Applying this test, the court held that a welder injured during the onshore construction of a platform destined for the outer continental shelf was covered by

OCSLA. *Id.* This holding was, of course, reversed by the Fifth Circuit en banc panel in a 9-5 vote. *Mills*, 877 F.2d at 357.

**[13]** In this case, the BRB affirmed the dismissal of Petitioner's OCSLA claim because Valladolid's injury did not satisfy the *Mills* situs-of-injury test. Because we decline to adopt that test, we remand the OCSLA question to the BRB for further consideration consistent with this opinion.

### IV.

**[14]** We next consider whether the BRB erred in denying benefits under the LHWCA. Under 33 U.S.C. § 903(a):

> compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

A LHWCA "employee" is "any person engaged in maritime employment." *Id.* § 902(3). Thus, a claimant seeking workers' compensation under the LHWCA must establish both a maritime situs and a maritime status. *Herb's Welding I*, 470 U.S. at 415-16; *Peru v. Sharpshooter Spectrum Venture LLC*, 493 F.3d 1058, 1061 (9th Cir. 2007).

Petitioner contends that the BRB erred in affirming the ALJ's determination that the onshore La Conchita facility, where Valladolid was killed, was not a maritime situs. Petitioner does not contest the ALJ's factual findings regarding the facility, but argues that the BRB should have reversed the ALJ on the legal question of whether La Conchita qualifies as an "adjoining area customarily used by an employer in load-

ing [or] unloading . . . a vessel." *Id.* § 903(a). We reject Petitioner's position and affirm the BRB.

We use a "functional relationship" test in determining whether a particular facility is a § 903(a) "adjoining area." *Brady-Hamilton Stevedore Co. v. Herron*, 568 F.2d 137, 141 (9th Cir. 1978). We consider, among other factors:

> the particular suitability of the site for the maritime uses referred to in the statute; whether adjoining properties are devoted primarily to uses in maritime commerce; the proximity of the site to the waterway; and whether the site is as close to the waterway as is feasible given all of the circumstances in the case.

*Id.* Although physical congruity with navigable water is not required, the facility must be "used as an integral part of longshoring operations." *Id.*

**[15]** Applying the *Herron* factors, we agree with the BRB that La Conchita is not a maritime situs. Although the facility is only 250-300 feet from the ocean, it is separated from the water by a highway and railroad tracks and has no direct access to any pier, dock, or other loading facility. *See Motoviloff v. Dir., Office of Workers' Comp. Programs*, 692 F.2d 87, 89 (9th Cir. 1982). The closest pier used by Pacific Operations is the Casitas Pass Pier, roughly three miles away. There are no adjoining properties engaged in maritime commerce.

Petitioner argues that La Conchita should be considered a "transshipment" facility because scrap metal from the offshore platforms was dumped there before being sold to third parties. Petitioner analogizes to *P.C. Pfeiffer Co. v. Ford*, 444 U.S. 69 (1979), where the Supreme Court held that two warehousemen, who handled cargo within a port but were not permitted to move cargo directly from or onto a vessel, were LHWCA "employees." *Id.* at 71, 83. The Court held that the

warehousemen "were engaged in maritime employment because they were engaged in intermediate steps of moving cargo between ship and land transportation." *Id.* at 82-83.

We find the analogy unpersuasive. First of all, *Pfeiffer* never addressed the situs requirement because the injuries occurred on a dock and a pier, which are indisputably maritime situs. Second, the handling of scrap metal at La Conchita did not involve "moving cargo directly from ship to land transportation." *Id.* The scrap metal was unloaded at the pier by third-party longshoremen, loaded into trucks driven by third-party drivers, and driven three miles to La Conchita, where it was dumped and would wait for up to two years before being hauled away by third-party dealers. The maritime activities—the movement of cargo "directly from ship to land transportation"—began and ended at the Casitas Pass Pier. Finally, La Conchita is simply not an "adjoining area" within the meaning of § 903(a). It is three miles from the pier and not adjacent to any maritime facilities.

The record demonstrates that the primary purpose of the facility—and the only reason for its proximity to the coastline—is to receive and process crude oil slurry extracted by the offshore platforms, a non-maritime activity. *Herb's Welding I*, 470 U.S. at 422-24. Its use as a convenient dumping ground for scrap metal from the platforms does not convert it into a maritime situs.

[16] Accordingly, we affirm the BRB's denial of benefits under the LHWCA. Because Valladolid's injury does not satisfy the situs requirement, and because the BRB did not reach the status issue, we do not address whether Valladolid was a maritime employee. *Williams v. Dir., Office of Workers' Comp. Programs*, 825 F.2d 246, 247 (9th Cir. 1987); *Hurston v. Dir., Office of Workers' Comp. Programs*, 989 F.2d 1547, 1548 n.3 (9th Cir. 1993).

## V.

We hold that the OCSLA workers' compensation provision, 43 U.S.C. § 1333(b), applies to any injury resulting from operations on the outer continental shelf, regardless of the location of the injury. An injury is "the result of" outer continental shelf operations if there is a substantial nexus between the injury and the operations. We therefore reject the situs-of-injury test adopted by the BRB, and remand for further considerations consistent with this opinion.

We also hold that the BRB did not err in finding that La Conchita was not a maritime situs. Accordingly, we affirm the denial of workers' compensation benefits under the LHWCA.

Each side shall bear its owns costs.

GRANTED in part, DENIED in part, and REMANDED.