*210 Justice Thomas
delivered the opinion of the Court.
The Outer Continental Shelf Lands Act (OCSLA) extends the federal workers’ compensation scheme established in the Longshore and Harbor Workers’ Compensation Act (LHWCA), 33 U. S. C. §901 et seq., to injuries “occurring as the result of operations conducted on the outer Continental Shelf” for the purpose of extracting natural resources from the shelf. 43 U. S. C. § 1333(b). The United States Court of Appeals for the Ninth Circuit determined that the OCSLA extends coverage to an employee who can establish a sub­stantial nexus between his injury and his employer’s extrac­tive operations on the Outer Continental Shelf. We affirm.
I
Petitioner Pacific Operators Offshore, LLP (Pacific), oper­ates two drilling platforms on the Outer Continental Shelf off the coast of California and an onshore oil and gas process­ing facility in Ventura County, California. Pacific employed Juan Valladolid as a general manual laborer — known in the trade as a roustabout — in its oil exploration and extraction business. Valladolid spent about 98 percent of his time on one of Pacific’s offshore drilling platforms performing main­tenance duties, such as picking up litter, emptying trashcans, washing decks, painting, maintaining equipment, and helping to load and unload the platform crane. Valladolid spent the remainder of his time working at Pacific’s onshore processing facility, where he also performed maintenance duties, includ­ing painting, sandblasting, pulling weeds, cleaning drain cul­verts, and operating a forklift.
While on duty at the onshore facility, Valladolid died in a forklift accident. His widow, a respondent here (hereinafter respondent), filed a claim for benefits under the LHWCA pursuant to the extension of that Act contained within the OCSLA. The OCSLA provides, in relevant part:
“With respect to disability or death of an employee resulting from any injury occurring as the result of op­ *211 erations conducted on the outer Continental Shelf for the purpose of exploring for, developing, removing, or transporting by pipeline the natural resources, or in­volving rights to the natural resources, of the subsoil and seabed of the outer Continental Shelf, compensation shall be payable under the provisions of the [LHWCA].” 43U.S. C. § 1333(b).
After a hearing, an Administrative Law Judge (ALJ) dis­missed respondent’s claim. The ALJ reasoned that Valla-­dolid’s fatal injury was not covered under § 1333(b) because his accident occurred on land, rather than on the Outer Con­tinental Shelf. On appeal, the United States Department of Labor’s Benefits Review Board affirmed, concluding that Congress intended to limit the coverage provided by the OCSLA to injuries suffered by employees within the “geo­graphical locale” of the Outer Continental Shelf. L. V. v. Pacific Operations Offshore, LLP, 42 BRBS 67, 71 (2008) (per curiam).
The Ninth Circuit reversed, holding that § 1333(b) neither contains a “situs-of-injury” requirement, as the Fifth Circuit has held, nor imposes a “but for” causation requirement, as the Third Circuit has held. See 604 F. 3d 1126, 1130-1140 (2010) (rejecting the holdings of Mills v. Director, Office of Workers’ Compensation Programs, 877 F. 2d 356 (CA5 1989) (en banc); Curtis v. Schlumberger Offshore Service, Inc., 849 F. 2d 805 (CA3 1988)). Instead, the Ninth Circuit concluded that “the claimant must establish a substantial nexus be­tween the injury and extractive operations on the shelf” to qualify for workers’ compensation benefits under the OCSLA. 604 F. 3d, at 1139. We granted Pacific’s petition for a writ of certiorari to resolve this conflict. 562 U. S. 1215 (2011).
II
In 1953, Congress enacted the Submerged Lands Act, 67 Stat. 29, 43 U. S. C. § 1301 et seq., which extended the bound­ *212 aries of Coastal States up to three geographic miles into the Atlantic and Pacific Oceans and up to three marine leagues into the Gulf of Mexico. At the same time, Congress en­acted the OCSLA, affirming the Federal Government’s au­thority and control over the “outer Continental Shelf,” de­fined as the submerged lands subject to the jurisdiction and control of the United States lying seaward and outside of the submerged lands within the extended state boundaries. 67 Stat. 462, 43 U. S. C. §§ 1331(a), 1332(1). As defined by the OCSLA, the Outer Continental Shelf includes the “submerged lands” beyond the extended state boundaries, § 1331(a), but not the waters above those submerged lands or artificial islands or installations attached to the seabed. For simplicity’s sake, we refer to the entire geographical zone as the “OCS.”
Section 1333 extends various provisions of state and fed­eral law to certain aspects of the OCS. For example, § 1333(a)(1) extends the Constitution and federal laws of civil and political jurisdiction “to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed,” for the purpose of extracting its natural resources. Section 1333(a)(2)(A) makes the civil and criminal laws of each adjacent State applicable to “that por­tion of the subsoil and seabed of the outer Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf.” Section 1333(b), the provision involved in this case, makes LHWCA workers’ compensation benefits available for the “disability or death of an employee resulting from any injury occurring as the result of operations con­ducted on the outer Continental Shelf” for the purpose of extracting its natural resources.
The question before us is the scope of coverage under § 1333(b). The parties agree that § 1333(b) covers employ­ *213 ees, such as oil rig and drilling platform workers, who are injured while working directly on the OCS to extract its nat­ural resources. They disagree, however, whether employ­ees who are involved in extraction operations but who are injured beyond the OCS are also covered under the OCSLA. This dispute focuses on the meaning of the phrase “any in­jury occurring as the result of operations conducted on the outer Continental Shelf” in § 1333(b).
The Courts of Appeals have offered competing interpreta­tions. In Curtis v. Schlumberger Offshore Service, Inc., 849 F. 2d, at 811, the Third Circuit held that, because Congress intended LHWCA coverage to be expansive, § 1333(b) ex­tends to all injuries that would not have occurred “but for” operations on the OCS. The Third Circuit thus concluded that an employee who worked on a semisubmersible drill rig, but who was killed in a car accident on the way to the heli­copter that was to fly him to that rig, was eligible for § 1333(b) benefits. Id., at 806, 811. As the Third Circuit summarized, “ ‘But for’ [Curtis’] travelling to [his drill rig] for the purpose of conducting ‘operations’ within § 1333(b), employee Curtis would not have sustained injuries in the automobile accident.” Id., at 811.
In Mills v. Director, supra, the Fifth Circuit, sitting en banc, adopted a narrower interpretation of § 1333(b). The court concluded that Congress intended to establish “a bright-line geographic boundary for § 1333(b) coverage,” and held that § 1333(b) extends coverage only to employees en­gaged in OCS extractive activities who “suffer injury or death on an OCS platform or the waters above the OCS.” Id., at 362. Applying its “situs-of-injury” test, the Fifth Cir­cuit held that a welder who was injured on land during the construction of an offshore oil platform was not eligible for § 1333(b) benefits. Id., at 357, 362.
In the case below, the Ninth Circuit rejected the Fifth Circuit’s “situs-of-injury” requirement as unsupported by the text of § 1333(b), and the Third Circuit’s “but for” test as too *214 broad to be consistent with Congress’ intent. 604 F. 3d, at 1137,1139. Instead, the Ninth Circuit adopted a third inter­pretation of § 1333(b), holding that a “claimant must establish a substantial nexus between the injury and extractive opera­tions on the shelf” to be eligible for § 1333(b) benefits. Id., at 1139. “To meet the standard,” the Ninth Circuit ex­plained, “the claimant must show that the work performed directly furthers outer continental shelf operations and is in the regular course of such operations.” Ibid.
The Solicitor General suggests yet a fourth interpretation of § 1333(b).[1] This interpretation would extend coverage to two categories of injuries: (1) all on-OCS injuries suffered by employees of companies engaged in resource extraction on the OCS; and (2) the off-OCS injuries of those employees who spend a substantial portion of their worktime on the OCS engaging in extractive operations. Brief for Federal Respondent 32-33. According to the Solicitor General, this test would provide § 1333(b) coverage for off-OCS injuries only to those employees whose duties contribute to opera­tions on the OCS and who perform work on the OCS itself that is substantial in both duration and nature. Id., at 35.
I­II
Pacific argues that the Fifth Circuit s situs-of-mjury test presents the best interpretation of § 1333(b). The crux of Pacific’s argument is that off-OCS injuries cannot be “the result of operations conducted on the outer Continental Shelf” for purposes of § 1333(b). Pacific asserts that because Valladolid was injured on dry land, his death did not occur as the result of extraction operations conducted on the OCS, and therefore respondent is ineligible for LHWCA workers’ compensation benefits. We disagree.
*215 A
The OCSLA extends the provisions of the LHWCA to the “disability or death of an employee resulting from any injury .occurring as the result of operations conducted on the outer Continental Shelf.” § 1333(b). Contrary to the view of Pa­cific and the Fifth Circuit, nothing in that language suggests that the injury to the employee must occur on the OCS. Section 1333(b) states only two requirements: The extractive operations must be “conducted on the outer Continental Shelf,” and the employee’s injury must occur “as the result of” those operations.
Despite the lack of a textual “situs-of-injury” requirement in § 1333(b), Pacific argues that it is logically impossible for an off-OCS employee to be injured “as the result of” on-OCS operations. Pacific offers no basis for this assertion, and we find none. Indeed, given that many OCS platforms are physically connected to onshore processing facilities via oil and gas pipelines, it is not difficult to imagine an accident occurring on an OCS platform that could injure employees located off the OCS.
Moreover, if, as Pacific suggests, the purpose of § 1333(b) was to geographically limit the extension of LHWCA cover­age to injuries that occurred on the OCS, Congress could easily have achieved that goal by omitting the following six words in §1333(b)’s text: “as the result of operations con­ducted.” Had Congress done so, the statute would extend LHWCA coverage to the “disability or death of an employee resulting from any injury occurring on the outer Continental Shelf.” But that is not the text of the statute Congress enacted.
Pacific also argues that, because all of § 1333(b)’s neighbor­ing subsections contain specific situs limitations, we should infer that Congress intended to include a situs-of-injury re­quirement in § 1333(b). See, e. g., § 1333(a)(2)(A) (adopting the civil and criminal laws of the adjacent State as federal law “for that portion of the subsoil and seabed of the outer *216 Continental Shelf, and artificial islands and fixed structures erected thereon, which would be within the area of the State if its boundaries were extended seaward to the outer margin of the outer Continental Shelf”)-[2] But our usual practice is to make the opposite inference. Russello v. United States, 464 U. S. 16, 23 (1983) (“Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Con­gress acts intentionally and purposely in the disparate inclu­sion or exclusion” (alteration and internal quotation marks omitted)). Congress’ decision to specify, in scrupulous de­tail, exactly where the other subsections of § 1333 apply, but to include no similar restriction on injuries in § 1333(b), con­vinces us that Congress did not intend § 1333(b) to apply only to injuries suffered on the OCS. Rather, § 1333(b) extends LHWCA workers’ compensation coverage to any employee injury, regardless of where it happens, as long as it occurs *217 “as the result of operations conducted on the outer Continen­tal Shelf.”
Pacific argues that this conclusion is foreclosed by lan­guage in Herb’s Welding, Inc. v. Gray, 470 U. S. 414 (1985), and Offshore Logistics, Inc. v. Tallentire, All U. S. 207 (1986); but neither of those cases held that § 1333(b) extends only to injuries that occur on the OCS. In Herb’s Welding, this Court considered whether an oil platform welder, who worked both within the territorial waters of Louisiana and on the OCS, was covered under the LHWCA after suffering an injury in the waters of Louisiana. 470 U. S., at 416-417. The Court explicitly declined to address whether the em­ployee was eligible for workers’ compensation benefits under § 1333(b) because that question was neither passed upon by the Court of Appeals nor fully briefed and argued before this Court. Id., at 426, n. 12. Although the Court acknowl­edged that an employee might walk in and out of workers’ compensation coverage during his employment due to the “explicit geographic limitation to the [OCSLA’s] incorpora­tion of the LHWCA,” id., at 427, the exact meaning of that statement is unclear. We cannot ascertain whether the comment was a reference to § 1333(b)’s explicit situs-of-­operations requirement, as respondents suggest, or the rec­ognition of an implicit situs-of-injury requirement, as Pacific argues. In any event, the ambiguous comment was made without analysis in dicta and does not control this case.
The same is true of the Court’s opinion in Offshore Logis­tics. In that case, the Court considered whether the widows of oil platform workers who were killed when their helicop­ter crashed into the high seas could file wrongful-death suits under Louisiana law. In the Court’s analysis of §1333, it stated, “Congress determined that the general scope of OCSLA’s coverage . . . would be determined principally by locale, not by the status of the individual injured or killed.” 477 U. S., at 219-220 (citing the situs requirement in § 1333(a)(2)(A)). In a footnote, the Court commented: “Only *218 one provision of OCSLA superimposes a status requirement on the otherwise determinative OCSLA situs requirement; § 1333(b) makes compensation for the death or injury of an ‘employee’ resulting from certain operations on the Outer Continental Shelf payable under the [LHWCA].” Ibid., n. 2. These comments about the scope of the OCSLA’s coverage and its determinative “situs requirement” do not provide definitive evidence that § 1333(b) applies only to in­juries that occur on the OCS. As in Herb’s Welding, it is unclear whether the statement in the Offshore Logistics footnote regarding § 1333(b) was referring to the explicit situs-of-operations requirement or to an implicit situs-of-­injury requirement. Moreover, the entire footnote is dictum because, as the Court explicitly stated, § 1333(b) had no bear­ing on the case. 470 U. S., at 219-220.
Finally, Pacific argues that including off-OCS injuries within the scope of the workers’ compensation coverage cre­ated by § 1333(b) runs counter to Congress’ intent in drafting the OCSLA. According to Pacific, Congress intended to create a uniform OCS compensation scheme that both filled the jurisdictional voids and eliminated jurisdictional over­laps between existing state and federal programs. Paci­fic points out that, without a situs-of-injury requirement to narrow the scope of § 1333(b), an off-OCS worker could be eligible for both state and federal workers’ compensation coverage.
There is no indication in the text, however, that the OCSLA excludes OCS workers from LHWCA coverage when they are also eligible for state benefits. To the con­trary, the LHWCA workers’ compensation scheme incorpo­rated by the OCSLA explicitly anticipates that injured em­ployees might be eligible for both state and federal benefits. An offsetting provision in the LHWCA provides that “any amounts paid to an employee for the same injury, disability, or death for which benefits are claimed under [the LHWCA] pursuant to any other workers’ compensation law or [the *219 Jones Act] shall be credited against any liability imposed by [the LHWCA].” 33 U. S. C. § 903(e). This provision, in ad­dition to the lack of any textual support for Pacific’s argu­ment, convinces us that Congress did not limit the scope of 43 U. S. C. § 1333(b)’s coverage to only those geographic areas where state workers’ compensation schemes do not apply.
B
Pacific also offers an alternative argument derived from the interaction of § 1333(b) and a provision of the LHWCA. Specifically, Pacific argues that because the LHWCA con­tains an explicit situs-of-injury requirement, see 33 U. S. C. § 903(a) (providing benefits only for injuries occurring “upon the navigable waters” of the United States), and because 43 U. S. C. § 1333(b) extends the LHWCA workers’ compensa­tion scheme to the OCS, § 1333(b) incorporates the strict LHWCA situs-of-injury requirement from § 903(a). Accord­ing to Pacific, the words “occurring as the result of opera­tions” in § 1333(b) impose a status requirement in addition to the imported LHWCA situs-of-injury requirement, with the result that employees who are injured on the OCS, but whose jobs are not related to extractive operations, are ex­cluded from the workers’ compensation coverage created by § 1333(b). Thus, an accountant who is injured on a field trip to the drilling platform would be ineligible under § 1333(b) despite being an employee who is injured on the OCS.
Although this alternative argument has the advantage of assigning some meaning to the words “occurring as the re­sult of operations” in § 1333(b), we still find it unpersuasive. First, it is unlikely that Congress intended to impose a situs-­of-injury requirement in § 1333(b) through such a nonintu-­itive and convoluted combination of two separate legislative Acts. As we have already noted, creating an express situs-­of-injury requirement in the text of § 1333(b) would have been simple. Second, combining the § 1333(b) definition of “United States” with the LHWCA situs-of-injury require­ *220 ment in 33 U. S. C. § 903(a) would result in an OCS workers’ compensation scheme that applies only to the seabed of the OCS and to any artificial islands and fixed structures thereon. See 43 U. S. C. § 1333(b)(3) (stating that “the term ‘United States’ when used in a geographical sense includes the outer Continental Shelf and artificial islands and fixed structures thereon”). Pacific concedes that this scheme would exclude the navigable waters above the shelf, includ­ing the waters immediately adjacent to any drilling plat­forms. Consequently, under Pacific’s view, even employees on a crew ship immediately adjacent to an OCS platform who are injured during a platform explosion would be excluded from § 1333(b) coverage. That view cannot be squared with the text of the statute, which applies to “any injury occur­ring as the result of operations conducted” on the OCS.
C
Pacific also makes several policy arguments in favor of a situs-of-injury requirement, but policy concerns cannot jus­tify an interpretation of § 1333(b) that is inconsistent with the text of the OCSLA. “[I]f Congress’ coverage decisions are mistaken as a matter of policy, it is for Congress to change them. We should not legislate for them.” Herb’s Welding, 470 U. S., at 427. The language of § 1333(b) simply does not support a categorical exclusion of injuries that occur beyond the OCS.
IV
The Solicitor General urges us to adopt a status-based in­quiry that applies one test to on-OCS injuries and a different test to off-OCS injuries. Specifically, the Government pro­poses that when a worker is injured on the OCS, he is eligi­ble for workers’ compensation benefits if he is employed by a company engaged in extractive operations on the OCS. But if the employee is injured off the OCS, the employee will be covered only if his “duties contribute to operations” on the OCS and if he performs “work on the [OCS] itself that is *221 substantial in terms of both its duration and nature.” Brief for Federal Respondent 35. This approach is derived from our decision in Chandris, Inc. v. Latsis, 515 U. S. 347 (1995) (establishing criteria by which an employee qualifies as a “seaman” under the Jones Act), and might well have merit as legislation. But it has no basis in the text of the OCSLA as presently enacted. The “occurring as the result of opera­tions” language in § 1333(b) plainly suggests causation. Al­though the Government asserts that a status-based test would be preferable to a causation-based test, we cannot ig­nore the language enacted by Congress.
The Third Circuit’s “but for” test is nominally based on causation, but it is also incompatible with § 1333(b). Taken to its logical conclusion, the “but for” test would extend workers’ compensation coverage to all employees of a busi­ness engaged in the extraction of natural resources from the OCS, no matter where those employees work or what they are doing when they are injured. This test could reasonably be interpreted to cover land-based office employees whose jobs have virtually nothing to do with extractive operations on the OCS. Because Congress extended LHWCA cover­age only to injuries “occurring as the result of operations conducted on the outer Continental Shelf,” we think that § 1333(b) should be interpreted in a manner that focuses on injuries that result from those “operations.” This view is consistent with our past treatment of similar language in other contexts. In Holmes v. Securities Investor Protec­tion Corporation, 503 U. S. 258 (1992), we considered a provi­sion of the Racketeer Influenced and Corrupt Organizations Act that provided a cause of action to “[a]ny person injured in his business or property by reason of a violation of section 1962.” 18 U. S. C. § 1964(c) (emphasis added). We rejected a “but for” interpretation, stating that such a construction was “hardly compelled” and that it was highly unlikely that Congress intended to allow all factually injured plaintiffs to recover. 503 U. S., at 265-266. Instead, we adopted a *222 proximate-cause standard consistent with our prior interpre­tation of the same language in the Sherman and Clayton Acts. Id., at 267-268. Similarly, 43 U. S. C. § 1333(b)’s lan­guage hardly compels the Third Circuit’s expansive “but for” interpretation.
Accordingly, we conclude that the Ninth Circuit’s “substantial-nexus” test is more faithful to the text of § 1333(b). We understand the Ninth Circuit’s test to require the injured employee to establish a significant causal link between the injury that he suffered and his employer’s on-­OCS operations conducted for the purpose of extracting nat­ural resources from the OCS.
Although the Ninth Circuit’s test may not be the easiest to administer, it best reflects the text of § 1333(b), which es­tablishes neither a situs-of-injury nor a “but for” test. We are confident that ALJs and courts will be able to determine whether an injured employee has established a significant causal link between the injury he suffered and his employer’s on-OCS extractive operations. Although we expect that em­ployees injured while performing tasks on the OCS will reg­ularly satisfy the test, whether an employee injured while performing an off-OCS task qualifies — like Valladolid, who died while tasked with onshore scrap metal consolidation — is a question that will depend on the individual circumstances of each case. The Ninth Circuit remanded the case for the Bene­fits Review Board to apply the “substantial-nexus” test in the first instance, and we agree with that disposition.
The judgment is affirmed, and the case is remanded to the Court of Appeals for further proceedings consistent with this opinion.

It is so ordered.

 The Director, Office of Workers’ Compensation Programs, United States Department of Labor, is a respondent in this case because the Di­rector administers the OCSLA workers’ compensation scheme established by § 1333(b).

 See also 43 U. S. C. § 1333(a)(1) (extending the Constitution and federal laws of civil and political jurisdiction “to the subsoil and seabed of the outer Continental Shelf and to all artificial islands, and all installations and other devices permanently or temporarily attached to the seabed, which may be erected thereon for the purpose of exploring for, developing, or producing resources therefrom, or any such installation or other device (other than a ship or vessel) for the purpose of transporting such re­sources, to the same extent as if the outer Continental Shelf were an area of exclusive Federal jurisdiction located within a State”); § 1333(c) (making the National Labor Relations Act applicable to any unfair labor act “occur­ring upon any artificial island, installation, or other device referred to in subsection (a) of this section”); § 1333(d)(1) (granting the Coast Guard en­forcement authority “on the artificial islands, installations, and other de­vices referred to in subsection (a) of this section or on the waters adjacent thereto”); § 1333(d)(2) (granting the Coast Guard authority to mark “any artificial island, installation, or other device referred to in subsection (a) of this section” for the protection of navigation); § 1333(e) (granting the Army authority to prevent the obstruction of access “to the artificial is­lands, installations, and other devices referred to in subsection (a) of this section”); § 1333(f) (saving clause applying “to the subsoil and seabed of the outer Continental Shelf and the artificial islands, installations, and other devices referred to in subsection (a) of this section”).