# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 7, 2013

No. 12-50164

Lyle W. Cayce
Clerk

OMAR NADHEER,

Plaintiff - Appellant

v.

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA;
AMERICAN INTERNATIONAL GROUP, INC.; L-3 COMMUNICATIONS
CORPORATION,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:11-CV-182

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Omar Nadheer appeals the district court's dismissal of this action against his former employer, his workers' compensation insurance carrier, and his insurance adjuster for breach of contract, breach of fiduciary duty, fraud, and conspiracy to defraud. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-50164

**FACTS AND PROCEEDINGS**

Defense contractor L-3 Communications Corporation ("L-3") hired Nadheer as an interpreter in Iraq in April 2006. With respect to his employment with L-3, Nadheer was subject to the Defense Base Act ("DBA"), 42 U.S.C. §§ 1651-1655, which extends the workers' compensation scheme set out in the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§ 901-950, to cover employees injured or killed, *inter alia*, "outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces," 42 U.S.C. § 1651(a)(6).

On December 17, 2007, Nadheer was seriously injured in a roadside bomb attack that struck a vehicle in which he was riding in the course of his employment. Nadheer was treated initially at a combat support hospital in Baghdad before being transferred to a hospital in Erbil in Iraqi Kurdistan. Pursuant to the requirements of the LHWCA, Nadheer's medical care was covered by L-3's workers' compensation insurance, and he was also provided with disability benefits. After being discharged from the hospital in Erbil, Nadheer eventually emigrated to the United States and was admitted as a refugee.

In addition to claims for health and disability benefits he had brought pursuant to the LHWCA with the Department of Labor's Office of Workers' Compensation Programs, Nadheer brought this action in the United States District Court for the Western District of Texas in March 2011. His amended complaint asserted common law claims for breach of contract, breach of fiduciary duty, fraud, and conspiracy to defraud against various combinations of three defendants: L-3; the Insurance Company of the State of Pennsylvania ("ICSOP"), his insurer; and ICSOP's parent corporation American International Group, Inc. ("AIG"), whose employees Nadheer alleged were the claims adjusters for his treatment. His amended complaint also requested that the district court enjoin

the defendants from contesting his claims before the Department of Labor on timeliness grounds.

Nadheer alleged that, before his transfer to Erbil, he had requested transfer to a hospital in Jordan and that his insurance provider had denied this request.  He claimed that this violated a provision in the LHWCA that allows patients to select their own physicians and that he was never informed of this and various other rights of his under the LHWCA.  He further asserted that, as a result of deficient medical treatment he received in Erbil, he had suffered horrific pain and a degree of potentially permanent disability to his right arm.

The defendants moved to dismiss Nadheer's claims for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  They argued that the exclusivity provisions of the DBA and the LHWCA deprived the district court of jurisdiction over Nadheer's claims.  The district court granted this motion with respect to all of Nadheer's claims save his breach of contract claim, on which it withheld judgment because the contract in question was not at the time in the record.  After this deficiency was remedied, the district court granted a subsequent motion to dismiss with respect to the breach of contract claim as well.  Nadheer appeals both of these orders.

## STANDARD OF REVIEW

We review a district court's grant of a motion to dismiss *de novo*.  *Jebaco Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009).  However, "the applicability of the DBA's exclusivity provision, like the applicability of the LHWCA's exclusivity provision, presents an issue of preemption, not jurisdiction." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012).  Since preemption is an affirmative defense and does not create a jurisdictional bar, we consider the defendants' Rule 12(b)(1) motions as Federal Rule of Civil Procedure 56 motions for summary judgment.  *See id.*  Summary judgment is warranted when "there is no genuine dispute as to any material fact and the

No. 12-50164

movant is entitled to judgment as a matter of law," FED. R. CIV. P. 56(a), and a district court's ruling as to the preemptive effect of federal law presents a question of law that this court reviews *de novo*, *Tex. Midstream Gas Servs. LLC v. City of Grand Prairie*, 608 F.3d 200, 206 (5th Cir. 2010).

## DISCUSSION

### 1. Statutory framework

The DBA provides that

> the provisions of the [LHWCA] shall apply in respect to the injury or death of any employee engaged in any employment . . . outside the continental United States by an American employer providing welfare or similar services for the benefit of the Armed Forces pursuant to appropriate authorization by the Secretary of Defense.

42 U.S.C. § 1651(a). The LHWCA provides that covered employers are required to provide various categories of medical care to their covered employees and that those employees "shall have the right to choose an attending physician . . . to provide medical care under this chapter." 33 U.S.C. § 907(a)-(b). Both the DBA and the LHWCA state that the various remedies they provide to injured employees are exclusive of other legal remedies. 42 U.S.C. § 1651(c) ("The liability of an employer . . . under [the DBA] shall be exclusive and in place of all other liability of such employer . . . to his employees . . . coming within the purview of [the DBA]."); 33 U.S.C. § 905(a) ("The liability of an employer [under the LHWCA] . . . shall be exclusive and in place of all other liability of such employer to the employee."). The parties agree that Nadheer was subject to the DBA and LHWCA with respect to his employment with L-3.

### 2. Scope of LHWCA exclusivity

Nadheer advances three arguments on appeal for why his claims are not preempted by the DBA and LHWCA. First, he argues that the exclusivity provisions of the DBA and LHWCA do not apply in this case because they do not immunize insurers from damages caused by intentional misrepresentations to

4

insured employees that cause injury outside the scope of the DBA and damages not recoverable under the DBA. Second, he asserts that the exclusivity provisions of the DBA and LHWCA do not immunize insurance carriers from breach of contract claims for breaches that occur during the adjustment of a DBA claim when the breach causes consequential damages not recoverable under the DBA. Third, he contends that we should revisit our long line of cases holding that the LHWCA's exclusivity provision applies to insurers as well as employers, in light of the Supreme Court's recent opinion in *Pacific Operators Offshore LLP v. Valladolid*, 565 U.S. ---, 132 S. Ct. 680 (2012).

### A. Intentional misrepresentation

Nadheer alleges that he suffered damages as a result of the defendants' intentional misrepresentation that his only option for further medical care was to go to the hospital in Erbil, despite his request to go instead to Jordan. He asserts that, because these damages are non-compensable under the DBA and LHWCA and arise from a breach of an insurer's general duty not to deceive its insured, and not from a statutorily created duty, his tort claims should not be preempted.

However, we have previously held that state law claims for bad faith withholding or termination of compensation benefits are preempted by the LHWCA. *See Atkinson v. Gates, McDonald & Co.*, 838 F.2d 808, 811 (5th Cir. 1988) (holding tort claims for bad faith termination of LHWCA benefits to be preempted); *Texas Emp'rs Ins. Ass'n v. Jackson*, 820 F.2d 1406, 1411-14 (5th Cir. 1987), *vacated and rev'd on other grounds*, 862 F.2d 491, 494 (5th Cir. 1988) (en banc).[1] We see no meaningful distinction between torts arising from the bad

---

[1] In an en banc sitting, we reversed *Jackson*. However, in doing so, we emphasized that the conclusion with respect to preemption in the panel opinion was still good law as a result of our similar opinion in *Atkinson*, 838 F.2d at 811. *Tex. Emp'rs Ins. Ass'n*, 862 F.2d at 496 n.7. This court has since cited the panel opinion in *Jackson* as stating the law with respect to LHWCA preemption. *See Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 364 n.4 (5th Cir.

No. 12-50164

faith *withholding* of benefits and those arising from the alleged bad faith *mis-administration* of benefits at issue here; both are preempted by the LHWCA's comprehensive statutory scheme.

Furthermore, we note that the LHWCA sets out criminal penalties for the fraudulent denial, diminution, or termination of benefits, or the making of a false statement for the purpose of denying, reducing, or terminating benefits. 33 U.S.C. § 931(c); *see Jackson*, 820 F.2d at 1412-13 (contrasting Congress's adding § 931(c) to the LHWCA in 1984 with its declining to create an analogous civil cause of action). As a result, if his claims are true, Nadheer may in fact have legal recourse against his insurers for the alleged malfeasance—but such recourse would sound in criminal law and not in tort.

### 4. *Breach of contract*

Nadheer argues that his breach of contract claims should not be preempted because language in his contract provided that his insurer would "pay promptly when due all compensation and other benefits required by the workers' compensation law." In his view, this language imposes a contractual obligation on his employer to provide LHWCA benefits separate from its statutory obligations under the LHWCA. An action for breach of this contractual obligation, he contends, should not be deemed preempted by the LHWCA's exclusivity provision, because such a suit would not arise under the LHWCA.

We disagree with this logic. Under Nadheer's theory, contracting to provide benefits under a comprehensive scheme—specifically designed to preclude civil liability in excess of that provided for by the scheme—would itself create civil liability in excess of that provided for by the scheme. "In a nutshell, it is difficult to imagine a more comprehensive scheme of federal regulation—one that leaves no room for state involvement—than that contained in the LHWCA."

---

1995) (citing *Jackson*, 820 F.2d at 1406).

*Jackson*, 820 F.2d at 1412. "[T]he whole theory of the [LHWCA], and of similar compensation legislation, is to provide the injured workman with certain and absolute benefits in lieu of *all* common law damages." *Haynes v. Rederi A/S Aladdin*, 362 F.2d 345, 350 (5th Cir. 1966). Allowing plaintiffs to recover separately for breach of contractual provisions invoking the LHWCA would subvert the very purpose of LHWCA. Therefore, Nadheer's breach of contract claims are preempted by the LHWCA.

### 5. *Insurers*

We have long held that claims against insurers, in addition to claims against employers, are implicitly preempted by the LHWCA's exclusivity provision. *See, e.g.*, *Atkinson*, 838 F.2d at 811 ("[T]he LHWCA impliedly grants the employer's insurance carrier . . . the same immunity which it grants the employer."); *Johnson v. Am. Mut. Liab. Ins. Co.*, 559 F.2d 382, 388 (5th Cir. 1977) ("A reading of the Act shows that while the Congress did not specifically grant immunity to a compensation insurer from liability as a third person tort feasor, numerous provisions of the Act and the spirit of the Act as a whole, equating the insurer with the employer, negate any intent to hold the insurer liable to suit for damages as a third person.").

Nadheer argues that this longstanding rule is invalid in the wake of the Supreme Court's decision in *Valladolid*, a case involving the Outer Continental Shelf Lands Act ("OCSLA"), which, like the DBA, incorporates the LHWCA. At issue in *Valladolid* was a workplace death of an offshore drilling platform employee that occurred in an onshore facility. The employee's widow sought LHWCA benefits because her husband had been a covered employee under OCSLA, but his former employer argued that OCSLA was inapplicable because the death occurred onshore. While Pacific Operators had urged the Supreme Court to adopt a "situs-of-injury" test from this court's decision in *Mills v. Director, Office of Workers' Compensation Programs, U.S. Department of Labor*,

877 F.2d 356 (5th Cir. 1989) (en banc), it instead held that an injury was compensable under OCSLA so long as it had a mere "substantial nexus" with the offshore operations covered under the Act. *See Valladolid*, 132 S. Ct. at 684-90.

Nadheer argues that, since the Supreme Court's rejection of the *Mills* situs-of-injury test was premised on that test's lack of fidelity to the plain text of the LHWCA, it also calls into question this court's longstanding rule that claims against insurers are implicitly preempted by the LHWCA's exclusivity provision, because insurers are not named alongside employers in that provision. *See* 33 U.S.C. § 905(a) ("The liability of an *employer* [under the LHWCA]. . . shall be exclusive and in place of all other liability of such employer to the employee." (emphasis added)).

However, the provision at issue in *Valladolid* was wholly different than the one at issue here, and *Valladolid* did not involve preemption. That the Supreme Court held that one provision of a statutory system should be strictly construed does not require us to construe strictly every provision of that system. In light of longstanding circuit precedent clearly on point, *see, e.g., Atkinson*, 838 F.2d at 811; *Johnson*, 559 F.2d at 388, this argument fails. *Jacobs v. Nat'l Drug Intelligence Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008) ("It is a well-settled Fifth Circuit rule of orderliness that one panel of our court may not overturn another panel's decision, absent an intervening change in the law, such as by a statutory amendment, or the Supreme Court, or our *en banc* court.").

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.