# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 14, 2021

Lyle W. Cayce
Clerk

No. 19-60610

Owensby & Kritikos, Incorporated; Louisiana Workers'
Compensation Corporation,

*Petitioners Cross-Respondents*,

*versus*

Director, Office of Workers' Compensation Programs,
United States Department of Labor,

*Respondent*,

*versus*

James Boudreaux,

*Respondent Cross-Petitioner*.

Petition for Review of an Order
of the Benefits Review Board
BRB No. 19-0239

Before Barksdale, Southwick, and Graves, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

Primarily at issue, in the light of *Pacific Operators Offshore, LLP v. Valladolid*, 565 U.S. 207 (2012) (establishing substantial-nexus test), is

whether an onshore injury en route to a rig platform on the Outer Continental Shelf (OCS) is recoverable under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. § 901 *et seq.*, as extended by the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C. § 1331 *et seq.* When injured, James Boudreaux was employed by Owensby & Kritikos, Inc., as an equipment-testing technician on platforms located on the OCS. His injury resulted from an automobile accident on his way to his work for Owensby on the OCS. Boudreaux sought benefits under LHWCA, as extended by OCSLA; an administrative law judge (ALJ) ruled in his favor, and the Benefits Review Board (BRB) affirmed. Owensby's petition for review is DENIED; Boudreaux's cross-application is DISMISSED; and Boudreaux's request for attorney's fees is GRANTED.

I.

The facts are not in dispute. Boudreaux's work for Owensby as an Automated/Advanced Ultrasonic Testing (AUT) field supervisor required his operating a magnetic arm to scan storage tanks—primarily located on rig platforms on the OCS—in which extracted materials from drilling operations, including petrochemicals, were deposited. This work, both offshore and onshore, ensured continued, safe use of the tanks.

Boudreaux spent significant amounts of time offshore for the job—at one point he was on a rig for two-and-a-half months. During the year before the accident, Boudreaux worked 2,880 hours, 89% of which were offshore. While Boudreaux was onshore and proceeding to an OCS rig, Owensby paid him for mileage and driving time based upon the distance from Owensby's office in Broussard, Louisiana, to Boudreaux's pickup-point for offshore transportation. Owensby also paid for time Boudreaux spent on a helicopter or boat out to a platform. On the other hand, Boudreaux did not receive travel pay for a trip to his onshore office.

On the day of the accident, Boudreaux left his home in Church Point, Louisiana, to drive to Freshwater City, Louisiana, for pickup for offshore transportation, stopping only for breakfast early that morning. As he normally did for travelling offshore, he had his inspection equipment in his vehicle. Near Freshwater City, another vehicle hit Boudreaux's, causing the accident. After the collision, an Owensby employee travelled to the accident site to retrieve Boudreaux's tank-testing equipment and transport it offshore.

Boudreaux sustained significant injury. His doctors, *inter alia*, prohibited his returning to offshore work. Owensby changed Boudreaux's job responsibilities after he recovered; he now performs mostly office work and annually earns approximately $50,000 less than he did as an AUT.

Owensby paid Boudreaux various disability benefits from shortly after the accident until October 2016. Since then, it has paid him temporary total disability benefits and will do so until he reaches maximum medical improvement.

Because the parties could not resolve whether Boudreaux's claim for additional benefits falls under the jurisdiction of LHWCA, as extended by OCSLA, or the Louisiana Workers' Compensation Act, the matter was referred to an ALJ. The ALJ determined: Boudreaux's injury occurred "in the course and scope" of his employment; and "the work he performed in testing the tanks . . . was directly related to outer continental shelf operations", based on the substantial-nexus test adopted by the Supreme Court in *Valladolid*.

Owensby appealed to the BRB, asserting: the ALJ improperly applied the *Valladolid* test because Boudreaux's injury was not *caused by* operations on the OCS; and, the ALJ applied a test rejected by the Court in *Valladolid*. The BRB rejected both assertions, concluding Boudreaux had satisfied

No. 19-60610

*Valladolid*'s substantial-nexus test, and his claim was covered by LHWCA, as extended by OCSLA.

After the BRB twice remanded to the ALJ to resolve lingering factual determinations, the ALJ determined Boudreaux was entitled to an award based on permanent total disability. Consequently, Owensby requested and received a summary affirmance from the BRB in order to petition our court for review.

## II.

Owensby claims the BRB improperly applied the substantial-nexus test in holding Boudreaux's injury compensable under LHWCA, as extended by OCSLA. Boudreaux seeks, *inter alia*, attorney's fees under LHWCA, 33 U.S.C. § 928.

## A.

When no factual dispute exists, as in this instance, coverage of an injury under LHWCA, as extended by OCSLA, is "a pure question of law" reviewed *de novo*. *Wood Grp. Prod. Servs. v. Dir., Off. of Workers' Comp. Programs*, 930 F.3d 733, 736–37 (5th Cir. 2019) (citation omitted). In conducting our review, however, our court "afford[s] deference to interpretations of the LHWCA [as extended by OCSLA] by the Director of the Office of Workers' Compensation Programs". *Baker v. Dir., Off. of Workers' Comp. Programs*, 834 F.3d 542, 545 (5th Cir. 2016) (first alteration in original) (quotation marks and citation omitted).

The two statutes under review—LHWCA and OCSLA—provide, in relevant part: "The term 'injury' means accidental injury or death arising out of and in the course of employment", 33 U.S.C. § 902(2) (LHWCA); and, "[w]ith respect to disability . . . of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental

4

No. 19-60610

Shelf for the purpose of . . . removing . . . the natural resources . . . of the outer Continental Shelf, compensation shall be payable under . . . [LHWCA]". 43 U.S.C. § 1333(b) (OCSLA).

In determining whether an injury is covered under LHWCA, as extended by OCSLA, we apply the two-part test adopted in *Valladolid*. 565 U.S. at 222. As quoted above, OCSLA generally extends coverage under LHWCA to injuries occurring as the result of OCS operations. 43 U.S.C. § 1333(b); *see Valladolid*, 565 U.S. at 212 ("Section 1333(b) . . . makes LHWCA workers' compensation benefits available for the 'disability or death of an employee resulting from any injury occurring as the result of operations conducted on the outer Continental Shelf' for the purpose of extracting its natural resources."). By extending LHWCA, any covered injury under OCSLA must first satisfy the limitations imposed by LHWCA.

This leaves us with two steps in our analysis to determine whether Boudreaux sustained a covered injury: first, did the injury arise out of, and occur within the scope of, his employment, under LHWCA's relevant provision, 33 U.S.C. § 902(2); and, second, was the injury sustained as the result of operations conducted on the OCS, under OCSLA's relevant provision, 43 U.S.C. § 1333(b)?

The ALJ's analysis followed this framework, primarily relying upon *Valladolid* and applying the substantial-nexus test to the facts at hand. The ALJ determined: Boudreaux's injury arose out of, and occurred in the course of, his employment by Owensby; and, Boudreaux's injury had a substantial nexus to extractive operations on the OCS. Along these lines, the BRB affirmed the ALJ's order because of "the broad discretion afforded . . . in applying the substantial nexus test" and the ALJ's fidelity in doing so.

No. 19-60610

### 1.

As for the first part of the test, and as discussed *supra*, Boudreaux's job required him to spend most of his time offshore; at one point he was on a rig for two-and-a-half months straight, and he worked offshore 89 percent of the year prior to the accident.  Additionally, and as also discussed *supra*, Boudreaux was compensated for his travel to and from the OCS—including the portion of his journey onshore—based on the distance from Owensby's office to Boudreaux's job site.  The parties, including the Director, agree: Boudreaux was acting within the course and scope of his employment.  *See* 33 U.S.C. § 902(2).  (Employees travelling to-and-from work are generally not within the course and scope of their employment under LHWCA, *see Cardillo v. Liberty Mut. Ins. Co.*, 330 U.S. 469, 479 (1942), but the trip-payment exception recognizes employees *are* within the course and scope when their employer, *inter alia*, pays for the employee's transportation.  *Id.* at 479–80 (discussing coming-and-going rule and exceptions under LHWCA as applied through the District of Columbia Workmen's Compensation Act); *see also Foster v. Massey*, 407 F.2d 343, 345–46 (D.C. Cir. 1968) (describing trip-payment exception).)

### 2.

Owensby's dispute is with application of the second part of the test.  It urges rejecting the BRB's ruling because it claims the BRB applied a "but-for" test rejected by the Supreme Court.  *See Valladolid*, 565 U.S. at 221 ("The . . . 'but-for' test . . . is also incompatible with § 1333(b).").  This rejected test was derived from a case with facts similar to those at hand.  *See Curtis v. Schlumberger Offshore Serv. Inc.*, 849 F.2d 805, 806 (3rd Cir. 1988).  In so doing, Owensby contends:  the appropriate test instead requires claimant to "establish [a] substantial nexus . . . between the work performed by [his] employer on the OCS and the accident".

The Director, however, urges our considering as instructive the ninth circuit's opinion in *Valladolid v. Pacific Operators Offshore, LLP*, 604 F.3d 1126 (9th Cir. 2010), *aff'd* 565 U.S. 207 (2012), which stated an "injury in a helicopter en route to the [OCS] likely would be" covered by LHWCA, as extended by OCSLA, *id.* at 1139. With the benefit of both the Supreme Court and earlier-related ninth circuit *Valladolid* opinions, the Director contends *Curtis'* but-for test was rejected because it would bring accountants into the scope of LHWCA and OCSLA coverage, not because its facts are incongruous with a holding satisfying the substantial-nexus test. *See Valladolid*, 565 U.S. at 221 ("[T]he 'but for' test would extend workers' compensation coverage to all employees of a business engaged in the extraction of natural resources from the OCS, no matter where those employees work or what they are doing when they are injured.").

Although the Supreme Court's *Valladolid* opinion overruled *Curtis'* "but-for" test, it did not bar holding covered an injury resulting from an onshore accident while an employee was traveling onshore to go offshore. *See id.* (rejecting "but-for" test because the test's scope is over-inclusive, but making no mention of factual delineations). On the contrary, *Valladolid* rejects a factual-line-drawing approach and only decides the legal test to be applied by "ALJs and courts . . . to determine whether an injured employee has established a significant causal link between the injury he suffered and his employer's on-OCS extractive operations" based on "the individual circumstances of each case". *Id.* at 222.

Additionally, the Court rejected the situs-of-injury test, which undoubtedly utilized factual-line-drawing based on the exact location of the injury sustained to determine coverage, *vel non*. *Id.* at 222 (rejecting situs-of-injury test because it was unsupported by the text of § 1333(b)). Taken together, the Court avoided declaring which factual scenarios would be covered by the substantial-nexus test.

Owensby's urging that our holding claimants are required to establish a substantial nexus between their employer's work performed on the OCS and the accident misreads the text of the two statutes by blurring the requirements of LHWCA's § 902(2) with those of OCSLA's § 1333(b). Owensby's interpretation reads § 902(2)'s course-and-scope requirement into the operating-on-the-OCS requirement of § 1333(b). Essentially, Owensby sees OCSLA as making compensable "any injury occurring as the result of, and in the course and scope of, operations conducted on the outer Continental Shelf". OCSLA does not include that limitation.

To show he sustained an injury "as the result of operations" on the OCS, claimant must establish a substantial nexus between the injury and extractive operations. 43 U.S.C. § 1333(b); *Valladolid*, 565 U.S. at 222. Section 1333(b) says nothing about the scope of the employee's job or his employer. *Valladolid* makes clear the only question § 1333(b) asks is whether the injury occurred as the result of OCS operations.

Our court last considered *Valladolid* in *Mays v. Chevron Pipe Line Co.*, 968 F.3d 442 (5th Cir. 2020). Pursuant to *Mays*, we look only to whether there is a "substantial nexus between the injury and extractive operations on the shelf" to determine whether an injury qualifies under OCSLA. *Id.* at 448 (quoting *Valladolid*, 565 U.S. at 211). The substantial-nexus test "requires a link *only* between the employee's 'injury' and extractive 'operations conducted on the [OCS]'". *Id.* at 449 (quoting 43 U.S.C. § 1333(b)) (emphasis added).

*Mays*' statutory analysis frequently emphasizes OCSLA's lack of limiting language. *E.g.*, *id.* at 449. Given the lack of limiting language, claims to narrow the statute fail for lack of textual support. *Id.* Along those lines, and, as the Court in *Valladolid* implied, OCSLA does not preclude recovery for an injury suffered en route to the OCS. *See* 565 U.S. at 219–20 (declining

to preclude recovery under specific facts by rejecting situs-of-injury test). Again, answering whether an injury is covered "will depend on the individual circumstances of each case". *Id.* at 222.

Applying the two-part framework to the facts before us, we hold Boudreaux's injury is covered under OCSLA. Among the facts relevant to our inquiry, we find persuasive Boudreaux's: being compensated by Owensby for both time and onshore mileage while traveling to and from the OCS; being on-the-job when he was injured; necessarily traveling to an intermediary pickup location to be transported from onshore to the OCS; and transporting his testing equipment in his vehicle. *Cf. Baker*, 834 F.3d at 548–49 (holding employee is not covered because, *inter alia*, his "particular job . . . did not require him to travel to the OCS *at all*") (emphasis in original). And, as noted, Owensby had another employee pick up Boudreaux's testing equipment to take it to the OCS after his accident. Each of these factors supports Boudreaux's injury occurring as the result of operations conducted on the OCS.

## B.

Boudreaux seeks: enforcement of the BRB's order granting him relief; and attorney's fees. We first address enforcement, *vel non*.

### 1.

Prior to submitting his brief in our court, Boudreaux filed, pursuant to Federal Rule of Appellate Procedure 15(b)(1), a cross-application to enforce the BRB order granting him relief. In oral argument, however, Boudreaux's counsel advised this relief is unnecessary if Owensby's petition is denied and Boudreaux receives his awarded compensation.

In any event, we lack jurisdiction to consider the cross-application. *See* 33 U.S.C. § 921(d) (conferring jurisdiction to enforce a cross-application

on "the Federal district court"). Accordingly, the cross-application is dismissed.

2.

Boudreaux requests attorney's fees under 33 U.S.C. § 928 for defending against Owensby's petition. LHWCA provides attorney's fees under certain circumstances for each stage of the proceedings to a successful claimant in a litigated case. § 928; *see FMC Corp. v. Perez*, 128 F.3d 908, 909–10 (5th Cir. 1997) (holding attorney's fees allowable under § 928(b) when "the dispute has been the subject of an informal conference", the parties disagree as to the compensation due under LHWCA, the case is litigated, and the claimant wins).

Given our holding for Boudreaux, Owensby is ordered, pursuant to § 928(b), to pay Boudreaux's attorney's fees for defending against the petition at hand. Owensby does not contest such an award. Accordingly, Boudreaux shall submit his fee-request, Owensby its response, and Boudreaux his reply. We will then determine the fee award.

III.

For the foregoing reasons, Owensby's petition for review is DENIED; Boudreaux's cross-application is DISMISSED; and his request for reasonable attorney's fees incurred in defending against the petition is GRANTED, pending our deciding the amount to be awarded.